Philip Aaron BANKS, et al., Plaintiffs-Appellees Cross-Appellants,

v.

HYATT CORPORATION,
Defendant-Appellant
Cross-Appellee,

Refco Poydras Hotel Joint Venture,
Defendant-Appellee.

No. 81–3377.

United States Court of Appeals,
Fifth Circuit.

Jan. 9, 1984.

Rehearing and Rehearing En Banc
Denied April 11, 1984.

See also La., 436 So.2d 1171.

Stephen J. Crimmins, New York City, for amicus curiae American Hotel & Motel Assoc.

Murray, Murray, Ellis, Braden & Landry, Stephen B. Murray, New Orleans, La., for Banks.

Boggs, Loehn & Rodrigue, Charles A. Boggs, New Orleans, La., for plaintiffs-appellees cross-appellants.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents the issue whether a landowner or an innkeeper can be liable to a business invitee or guest, respectively, for a criminal assault by a third party that occurs just outside the entrance doors to the hotel on property owned by the landowner but serving as a public sidewalk.

At 9:30 p.m. on April 12, 1979, an armed robber shot Dr. Robert Banks a few feet from the Loyola Avenue entrance to the Hyatt Hotel and the Poydras Plaza Mall in New Orleans. Dr. Banks was a registered guest of the hotel. He and a friend, Dr. John Hakola, were returning from dinner in the French Quarter. They had walked back and were "approximately at the door of the hotel", according to Dr. Hakola, when they were confronted by two young men, one of whom had a gun. Dr. Hakola managed to enter the building, but Dr. Banks was not so fortunate. He was shot and fell dead on the sidewalk, his head thirty feet from the street curb of Loyola Avenue and his feet only four feet from the glass doors at the entrance way to the Hyatt Hotel and the Poydras Plaza Mall.

Dr. Banks's widow and children brought this diversity action for wrongful death against Hyatt Corporation, lessee and operator of the hotel, and Refco Poydras Hotel Joint Venture, owner and operator of the Poydras Plaza Mall and owner of the hotel. The plaintiffs charged the defendants with negligently (1) failing to provide adequate

Bienvenu, Foster, Ryan & O'Bannon, Robert N. Ryan, New Orleans, La., for defendant-appellant cross-appellee.

security to protect the decedent from assaults by third persons, and (2) failing to warn him of the danger of being assaulted near the Loyola Avenue entrance to the hotel and mall. After extensive discovery the parties tried the matter from April 27 through May 1, 1981. The jury returned a verdict, on written interrogatories, finding both Hyatt and Refco negligent and awarding damages totalling $975,000 for all the plaintiffs.

Hyatt and Refco filed motions for judgment notwithstanding the verdict or, alternatively, for a new trial. After a hearing, the district court denied Hyatt's motions, but granted Refco's motion for a judgment n.o.v. Hyatt appealed from the judgment in favor of Refco as well as from the judgment in favor of the plaintiffs. The plaintiffs appealed from the judgment in favor of Refco. We affirm.

## I. FACTS

On the facts, this case is sui generis. Because we could find no controlling Louisiana decisions and no common law decisions specifically on point, we certified certain questions to the Louisiana Supreme Court.[1] That Court was "of the opinion that once the relevant facts are determined, the case can be decided on existing, established principles of Louisiana law". It therefore denied the certification. *Banks v. Hyatt Corp.,* La.1983, 436 So.2d 1171.

### A. "The Relevant Facts" Are Not in Dispute

The plaintiffs begin their brief with the statement that the "essential facts of this case are undisputed". Hyatt and Refco make the same statement in their briefs, and we agree. The dispute is over the inferences to be drawn from the facts. The troublesome problem is whether the killing occurred in circumstances and at a place in which the jury could properly find Hyatt liable for breach of the innkeeper's duty of care to a guest and Refco liable for breach of a landowner's duty of care to an invitee.

The trial court rejected Hyatt's proposed charge to the jury:

"An innkeeper, such as Hyatt Corporation, has no duty to protect its guests from assaults by third persons committed *outside the environs* of the hotel and, more particularly, it has no duty to protect its guests from assaults by third parties in areas where such protection is commonly owed by a Municipal Police Department, such as on public sidewalks."

2 Record 338 (emphasis added). In his instructions to the jury, the trial judge did not use the word "premises" nor the broader term "environs" that Hyatt had suggested. As appears from the pertinent charge quoted in the margin, the trial judge did not limit the physical area in which an

1. "1. Does an innkeeper have a duty to protect its guests from assaults or injury by third persons, either by warning or by employing other security measures, when it knows, or in the exercise of the standard of care prescribed in subparagraph A, should know, that it is possible that injury may occur within the immediate environs of the hotel?
"A. If so, what is the degree of care owed: Is it a high degree of care or is it a reasonable degree of care?
"B. If so, within what geographical limits does this duty of care exist?
"C. How immediate must the threat of harm, or how foreseeable must the threat of harm be in order for the duty to come into existence?
"2. Is a mall or building owner in whose building an inn is located under a duty of care to protect its invitees, including those persons

on its property and those about to enter its building, either by warning or by taking alternative security measures, from assaults or injury by third persons when it has knowledge or should have knowledge, in the exercise of the degree of care prescribed in subparagraph A, that it is possible that an injury or an assault might occur within the close surroundings of the mall or building?
"A. If so, what is the duty of care owed: Is it a high degree of care or a reasonable degree of care?
"B. If so, within what geographical limits does such a duty of care exist?
"C. How immediate or foreseeable must the threat of harm be in order for the duty of care to come into existence?"
*Banks v. Hyatt Corp.,* 5 Cir.1983, 708 F.2d 159, 162.

innkeeper owes a duty of care to a guest for acts of a third person.[2]

■ If the charge is taken literally, Hyatt is correct in arguing that the hotel would be liable to a guest for any harmful act occurring any place, as long as the hotel "could have discovered" the act and protected the guest "by controlling the conduct of the tortfeasor or by giving adequate warning". Such is not the law of Louisiana or of any other state. The instructions must be construed in the light of common sense. As we read the charge and as the jury must have read the charge, the trial judge intended the jury to consider—and apparently the jury did consider—all the physical facts relating to the killing and all the circumstances involving Hyatt's responsibility, and not just that Dr. Banks was killed at a location beyond the legal description of the hotel property and in an area serving as a public sidewalk, title to which was in Refco subject to a public servitude of passage. The instructions imply that an innkeeper's duty of care to a guest extends to the environs of a hotel, that is, an area immediately outside of a hotel's entrance or an area that a reasonable jury might consider to be part of the entrance. Here, the jury undoubtedly inferred that the location of the killing was within an area where Hyatt was responsible for security.

Perhaps because the trial judge considered that an innkeeper owes a higher duty of care to a guest than a possessor of land owes to an invitee, he limited the liability of Refco by charging as follows:

**2.** The trial judge charged:
"Although a proprietor of an inn or hotel is not an insurer of the safety of his guests or patrons against tortious or improper acts or conduct of other guests, patrons, or third persons, he is bound to exercise reasonable care in this respect for their safety. Such a proprietor is liable for injuries to guests or patrons caused by intentionally harmful acts of third persons, if, by the exercise of reasonable diligence, he could have discovered that such acts were being done or were about to be done and could have protected his guests or patrons by controlling the conduct of the tortfeasor or by giving adequate warning to enable the guest to avoid him.
"In this regard, the proprietor is not bound to anticipate and guard against the unusual

"In order to hold defendant, REFCO, liable, you must first find from the evidence that defendant, REFCO, was the *owner of the property at the location* of the death of decedent. Should you so find, then you are instructed that an owner must use ordinary care to protect patrons against the wrongful acts of third persons, who may be *in or upon the premises,* where he has reasonable cause to anticipate the wrongful act and the probability of injury."

2 Record 391 (emphasis added). This charge indicates that the trial judge concluded that the jury could find Refco to be "the owner of the property at the location of the death of the decedent". As in its consideration of Hyatt's liability, and not unreasonably, the jury necessarily inferred that Refco's area of invitation to invitees included the immediate access to the premises. Nevertheless, the trial judge granted the judgment n.o.v. in favor of Refco.

### B. The Physical Layout of the Hotel and Mall

Besides the property leased to Hyatt Corporation, Refco owned and operated the Poydras Plaza Shopping Mall. Refco had title to the location where the killing occurred, subject to a servitude of passage. The servitude, which Refco's predecessor in title had granted to the City of New Orleans, extended from the curb of Loyola Avenue through the mall to an elevated walkway to the Superdome.

or abnormal, or against something which reasonable care, skill, or foresight could not have discovered or prevented. There is no duty imposed on the proprietor to warn of obvious dangers created by a third person unless he had knowledge of such dangers or unless knowledge may be inferred from the surrounding circumstances. While the standard of care is that of an ordinarily prudent person, it must be realized that reasonable care is a relative term in that the degree of care must be commensurate with the risks and dangers attending the activity being pursued and changes with the facts and circumstances of each particular case."
2 Record 390.

Poydras Plaza Mall is a two-story rectangular structure with the long sides perpendicular to Loyola Avenue. It is located in the middle of the block between Poydras and Girod Streets. Directly behind it and contiguous to it is the Hyatt Hotel, the residential portion of which is a tall tower. On the front wall of the mall on an overhang that goes straight up for two floors are large letters reading "Poydras Plaza". Three sets of glass doors are recessed under the overhang and lead to the mall, the hotel, and ultimately the Superdome. A person a few feet in front of the doors would therefore be under the second floor of the building and within the entrance way. The photographs admitted into evidence clearly demonstrate this fact. "Hyatt Regency" is lettered on the middle set of doors, "Poydras Plaza" on the left-hand doors, and "Superdome" on the right-hand doors, as one faces the building. On one side of the building next to the doors is a sign saying "Regency Conference Center", and on the other side of the building is a sign saying "Imperial Palace Regency". The hotel is advertised and frequently referred to as the Hyatt Regency Hotel. There is only one other entrance to the hotel, the motor lobby at the rear of the building. The mall now has stores and offices on each of its two levels, but in 1979 the only businesses open to the public were located on the second level.

An unobstructed passageway, subject to the servitude of passage previously mentioned, enables one to walk from the Loyola Street entrance through the Poydras Plaza to the Superdome. Three quarters of a block from Loyola Avenue, the mall divides and passes around a set of elevator banks, a stairwell, and escalators leading to the portions of the hotel tower occupied by Hyatt and the lower level reception and registration area of the hotel. The two halves rejoin and continue in the form of an elevated walkway to the Superdome, one block from the hotel tower.

The street level portion of the passageway ends abruptly behind and beneath the second set of stairs from the Loyola Avenue entrance. The ground level right of passage is blocked by a solid wall. To reach the second level of the shopping mall and to continue through the structure, one must ascend one of two sets of stairs or use escalators adjacent to the set of stairs nearest the mall entrance on Loyola Avenue. To proceed further, one must go through the atrium area of the hotel tower. This entire mall area is open to the public and, of course, to hotel guests.

## C. Evidence of Previous Criminal Incidents

The plaintiffs introduced evidence to show that the Hyatt-Poydras Plaza complex and its environs had been the scene of a number of crimes. Some of the evidence was in the form of "incident reports" and "security log" entries prepared by Hyatt security guards detailing each criminal incident that the guards investigated and reported. These reports described incidents occurring both on and off the premises. In the three month period preceding the Banks killing, there were eleven armed robberies and five simple robberies within the immediate surroundings of the hotel. Dr. Banks was the second person to be shot at the Loyola Avenue entrance, and the fifth victim of armed robbery at the entrance, since the date of the hotel's opening in 1976.

At trial, the Hyatt Director of Security, Joseph Murry, reviewed twenty-one Hyatt Security Department Incident Reports describing incidents at the Loyola Avenue entrance or in the near vicinity of that entrance. The incidents occurred between December 17, 1976, and April 6, 1979, only six days before the death of Dr. Banks. Twelve of those incidents involved weapons. Murry also reviewed Hyatt Security logs detailing approximately fifty additional incidents occurring between September 1976 and April 1979. Of these incidents, at least fourteen involved weapons.

Murry's own correspondence reflected no less than seven "serious criminal violations" on or about the Hyatt premises between February 5, 1979, and March 6, 1979. The correspondence showed that the prime hours of crime incidence were between 6:00

p.m. and 2:00 a.m. and, specifically, that increased patrols were required on the Loyola Avenue corridor between Girod and Poydras Streets.

A representative of Property Management Systems, Inc., a national management corporation that contracted with Refco to supply management services for the mall, testified that he had recommended to Refco that a security guard be stationed at the Loyola Avenue entrance to the mall between the hours of 8:00 p.m. and 4:00 a.m. He also said that he had made the recommendation because that entrance to the mall was his "area of responsibility".

### D. Provisions for Security

In April 1979, Refco operated the mall through Property Management Systems. Earlier, in the 1976 lease to Hyatt, Refco had agreed to provide normal and customary upkeep and security at no cost to Hyatt. In 1978 Refco, through Property Management Systems, contracted with Hyatt for the hotel to hire men, trained and employed by Hyatt, to provide security in the mall area from the Loyola Avenue entrance through and including the shopping area on the second level. Hyatt's Chief of Security supervised the security personnel, but Refco dictated security policy by issuing instructions through Hyatt's Chief. Each mall officer prepared a report at the end of his shift, which went to Property Management Systems. Hyatt paid the mall officers' salaries and billed Refco for the total cost of these payments. Security officers wore Hyatt blazers and carried Hyatt radios so that they could alert the hotel to any danger in the mall that might threaten guests in the hotel. Hyatt's former general manager testified that Hyatt participated in the security measures so that it "would, in fact, have at no cost to [Hyatt] our man with a visible presence in the shopping plaza so that [Hyatt] would know of any activity in that area before it might affect the operation of the hotel". Testimony of Thomas R. Gaskill, 5 Record 194.

Early in 1979, before Dr. Banks's death, Hyatt, Refco, and three other property owners in the square became concerned about the increase in crime in and around their property. They requested the New Orleans Police Department to detail additional police patrols to the area. The department denied this request. The five property owners then hired off-duty, uniformed, armed police officers to patrol the perimeter of the property including the parking area on each side of the mall, although none of the five had leased that area. The "perimeter patrol" started three weeks before the Banks incident. It was a large area for one man to patrol. At the time of the killing, the officer providing perimeter protection was in the motor lobby, at the opposite end of the complex.

## II. ISSUES ON APPEAL

Hyatt contends on appeal that the district court's instructions regarding the duty of an innkeeper to protect guests represent a "novel, unprecedented and unwarranted extension" of that duty. Hyatt also contends that the district court erred (1) in refusing to instruct the jury on contributory negligence and assumption of risk, and (2) in granting the judgment n.o.v. in favor of Refco.

Refco argues that the owner of a building owes no duty to protect third parties from crimes occurring on a public sidewalk outside the building. If a duty of reasonable care is due, Refco maintains, it complied with that duty.

The defendants properly preserved these points in the trial court.

■ Because we find no evidence of contributory negligence or assumption of risk on the part of Dr. Banks,[3] we affirm the

---

3. In *Roberts v. Tiny Tim Thrifty Check,* La. App. 4 Cir.1979, 367 So.2d 64, the court held that a business invitee who initiated a physical struggle with an armed assailant was guilty of contributory negligence and assumption of risk. *See id.* at 66. There is absolutely no evidence in this case that Dr. Banks initiated a struggle with his assailant. The investigating detective proffered his unsubstantiated opinion that there had been a struggle between Dr. Banks and his assailant, but the detective did not

district court's refusal to instruct the jury on those defenses. Thus, the primary issue concerns the duty of care that Hyatt and Refco owed Dr. Banks.

## III. DUTY OF CARE

### A. The Nature of the Defendants' Respective Duties

 Although the Restatement of Torts maintains that landowners and innkeepers owe the same duty of care towards business invitees and guests, respectively,[4] Louisiana law recognizes a distinction in this regard. The owner or operator of a business owes a duty to invitees to exercise reasonable care to protect them from injury. This duty does not extend, however, to unforeseeable or unanticipated criminal acts by an independent third person. "Only when the owner or management of a business has knowledge, or can be imputed with knowledge, of a third person's intended criminal conduct which is about to occur, and which is within the power of the owner or management to protect against, does such a duty towards a guest arise." *Davenport v. Nixon,* La.App. 1 Cir.1983, 434 So.2d 1203, 1205 (citing cases); *accord Pennington v. Church's Fried Chicken, Inc.,* La.App. 1 Cir.1980, 393 So.2d 360, 362; *see also, e.g., Gottschalk v. Smith,* Fla.App.1976, 334 So.2d 102, 103, *cert. denied,* Fla., 341 So.2d 1085. Because there is no evidence in this case that Refco employees knew, or can be imputed with the knowledge, that Dr. Banks and his companion were about to be assaulted at the Poydras Street entrance to the mall, Refco cannot be held to have violated its duty of care to Dr. Banks. We

therefore affirm the district court's decision to grant judgment n.o.v. in favor of Refco.

 The Louisiana Supreme Court has recently held that innkeepers owe their guests a duty of care higher than ordinary or reasonable care:

> "An innkeeper does not insure his guests against the risk of injury or property loss resulting from violent crime. The innkeeper's position vis-a-vis his guests is similar to that of a common carrier toward its passengers. Thus, a guest is entitled to *a high degree of care and protection. The innkeeper has a duty to take reasonable precautions against criminals.*"

*Kraaz v. La Quinta Motor Inns, Inc.,* La. 1982, 410 So.2d 1048, 1053 (emphasis added; citations omitted).[5] This distinction between innkeepers and other businesses is not unique in American jurisprudence. This Court has noted in dictum that some cases require innkeepers to exercise "a higher degree of care"[6] than "ordinary or reasonable care to protect their guests against injury by third persons". *Nordmann v. National Hotel Co.,* 5 Cir.1970, 425 F.2d 1103, 1107. Florida law recognizes the same distinction. An ordinary business cannot be liable for a third-party assault against an invitee unless the business has actual or imputed knowledge of the impending assault and the opportunity to prevent it. *See, e.g., Gottschalk,* 334 So.2d at 103; *see also Reichenbach v. Days Inn, Inc.,* Fla.App.1981, 401 So.2d 1366, 1369 n. 13 (Cowart, J., concurring specially) (citing cases), *petition for review denied,* Fla.1982, 412 So.2d 469. An innkeeper, however, "may be liable if he fails to take *reasonable*

---

indicate who had initiated the struggle. 4 Record 95.

**4.** *See* Restatement (Second) of Torts § 314A (1965). *See generally* Comment Note, 10 A.L. R.3d 619 (1966) (discussing cases dealing with liability for failure to protect another against criminal attack by third party); Annot., 70 A.L. R.2d 628 (1960) (same).

**5.** The court in *Davenport* questioned, but did not decide, whether the *Kraaz* court meant to subject innkeepers to a more demanding duty of care than that required of other businesses.

*See Davenport,* 434 So.2d at 1205. We find it clear from the language quoted in text that the Louisiana Supreme Court did intend to recognize such a distinction.

**6.** "A high degree of care" is the language used by the courts in a number of cases in describing the standard of care in the innkeeper-guest relation. *See, e.g., Mrzlak v. Ettinger,* 1975, 25 Ill.App.3d 706, 712, 323 N.E.2d 796, 800; *Fortney v. Hotel Rancroft, Inc.,* 1955, 5 Ill.App.2d 327, 335, 125 N.E.2d 544, 548.

*precautions to deter* the *type* of criminal activity which resulted in a guest's injury". *Reichenbach,* 401 So.2d at 1367 (emphasis added). The distinction is no doubt rooted in the belief that business patrons of innkeepers, like those of common carriers and unlike those of other businesses, have entrusted their personal security to the innkeeper.

█ In the present case, the trial court instructed the jury to use the standard of "reasonable care", "that of any ordinarily prudent person". As is apparent from the above discussion, this instruction is inaccurate, but in a manner favorable to Hyatt. Under *Kraaz,* innkeepers owe a high degree of care, which embraces a duty to take reasonable precautions against criminal assaults on guests. Thus, the trial court *did not commit* reversible error in its instruction concerning the *nature* of Hyatt's duty.

## B. The Physical Extent of Hyatt's Duty

The question remains whether Hyatt is entitled to judgment as a matter of law because the assault on Dr. Banks occurred outside of the entrance doors to the hotel, on a sidewalk subject to a servitude of passage. After examining general tort doctrine, the relevant caselaw, and the policies underlying tort liability, we find ourselves unwilling to create an immunity based on a distance of four feet.

### 1. General Tort Doctrine

With certain exceptions, none applicable in the instant case, the Louisiana law of delicts is substantially similar to the common law of torts. Louisiana courts have frequently quoted and cited with approval the first and second Restatements of Torts, Corpus Juris, American Jurisprudence, Prosser, and Harper & James. Article 2315, the generally governing statutory provision, is broad enough to allow Louisiana courts to develop delictual responsibility along common law lines.[7] Indeed, the doctrine of contributory negligence, followed for many years in Louisiana, is an import from the common law incompatible with the spirit of the civil law.[8]

The Restatement of Torts sets forth the duties to aid or protect another that arise out of special relations existing between the actor and the person to be aided or protected. The general rule, as stated in section 314 of the first Restatement of Torts (1934), is that one person's realization that action on his part is necessary to protect another person does not in itself impose a duty to take such action.[9] Section 314A, added in the second Restatement of Torts (1965), states the following exceptions to the rule:[10]

"Special Relations Giving Rise to Duty to Aid or Protect

"(1) A common carrier is under a duty to its passengers to take reasonable action

"(a) to protect them against unreasonable risk of physical harm, . . .

" . . .

"(2) An innkeeper is under a similar duty to his guests.

"(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation."

---

7. Article 2315 of the Louisiana Civil Code provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it". La.Civ. Code Ann. art. 2315 (West Supp.1982).

8. Louisiana only recently adopted the principle of comparative negligence. 1979 La.Acts, No. 431, *amending* La.Civ.Code Ann. art. 2323 (West 1979).

9. "Duty to Act for Protection of Others
"The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Restatement (First) of Torts § 314 (1934).

10. The Restatement of Torts holds landowners and innkeepers to the same duty of care towards invitees and guests, respectively. As noted in Section A, Louisiana law distinguishes between the duty of care owed by landowners and that owed by innkeepers by holding innkeepers to a higher degree of care. The Restatement is discussed here only for its relevance to the physical extent of the innkeeper's duty of care.

Comment c of this section limits this duty of care to the premises of the innkeeper or possessor of land:

"The rules stated in this Section apply only where the relation exists between the parties, and the risk of harm, or of further harm, arises in the course of that relation. A carrier is under no duty to one who has left the vehicle and ceased to be a passenger, nor is an innkeeper under a duty to a guest who is injured or endangered while he is away from the premises. Nor is a possessor of land under any such duty to one who has ceased to be an invitee."

Comment e of section 332, defining "invitee", states: "The possessor of land is subject to liability to another as an invitee only for harm sustained while he is on the land within the scope of his invitation."

■ The Restatement unquestionably states the general rule correctly. If we were to apply the rule strictly, giving a literal reading to the two comments quoted above, we might be compelled to reverse the judgment against Hyatt. But as Professor Prosser, the first reporter for the second Restatement of Torts, has said:

"This area of invitation will of course vary with the circumstances of the case. It extends to the entrance of the property and to a safe exit after the purpose [of the visit] is concluded; and it extends to all parts of the premises to which the purpose may reasonably be expected to take him."

W. Prosser, *Law of Torts* § 61, at 392 (4th ed. 1975).

We find Professor Prosser's gloss on the Restatement persuasive. We therefore conclude that the general law of torts, as reflected in the Restatement and in Prosser, does not preclude recovery against Hyatt for injury occurring in the entrance way to the defendants' premises.

## 2. The Relevant Caselaw

There are no relevant Louisiana codal articles or statutes. The parties have been unable to find any cases directly on point, and this Court has done no better. The appellants and the appellees have directed our attention to cases on the fringe of the issue.

Hyatt, Refco, and the American Hotel and Motel Association (amicus curiae), rely particularly on *Mitchell v. Archibald & Kendall, Inc.,* 7 Cir.1978, 573 F.2d 429; *Kline v. 1500 Massachusetts Avenue Apartment Corp.,* D.C.Cir.1970, 439 F.2d 477; and *Semmelroth v. American Airlines,* E.D.Ill. 1978, 448 F.Supp. 730.

In *Mitchell* the plaintiff attempted to deliver a truckload of merchandise to the defendant's receiving dock. Because another truck was at the dock, the defendant's employees instructed the plaintiff to wait with his truck on the street outside the defendant's loading area. While waiting, the plaintiff was shot and seriously wounded by an unknown assailant. The defendant's employees were aware that there had been repeated criminal acts on and about the premises, and the complaint alleged that they knew or should have known of the high risk of criminal attack upon any driver waiting in a truck parked in that area. The Court of Appeals affirmed the district court's dismissal of the complaint, on the ground that the defendant could not be liable for the criminal act of a third party that occurred off the defendant's premises and in the public street. The Court of Appeals stated:

"A possessor of land is subject to liability to business invitees 'while they are upon the land.' In the present case, the Mitchells were parked upon a public thoroughfare....

"[T]he Illinois courts, we believe, would rule that Comment c to § 314A controls. We do not regard the defendant-appellee's concession that Lawrence Mitchell was an invitee on the date and time of his injury as an irrevocable waiver of its defense that Mitchell ceased to be an invitee at the moment when he left the receiving dock area and returned to the street. Under the direct wording of Comment c, it is clear that A & K had no duty to the Mitchells. The district court's dismissal of the complaint because of the

want of any existing duty comports with that analysis."

573 F.2d at 437–38 (footnote omitted). In *Mitchell,* unlike the instant case, the victim was clearly not within the entrance way to the premises in the sense that Dr. Banks was in the entrance way to the Hyatt. The district court in *Mitchell* noted specifically that the plaintiff's injury did not occur "on an ingress or egress to defendant's premises". *Id.* at 430 n. 1.

In *Kline* a tenant sued her landlord for an assault committed by a third party in a common hallway of an apartment building. The evidence showed that, when the plaintiff leased the apartment in 1959, the landlord maintained an attendant at the main entrances and kept the one unattended entrance door locked at night. By 1966, the date of the occurrence, the entrances were generally left unlocked and unguarded. Over the years an increasing number of assaults, larcenies, and robberies were perpetrated against the tenants in and from the common hallways. The landlord had knowledge of these occurrences. The Court of Appeals determined that the duty of the landlord to protect his tenants against assaults by third parties was identical with that of an innkeeper vis-a-vis his guests. *See* 439 F.2d at 482–83. In finding for the plaintiff, the Court said:

> "We do not hold that the landlord is by any means an insurer of the safety of his tenants. His duty is to take those measures of protection which are within his power and capacity to take, and which can reasonably be expected to mitigate the risk of intruders assaulting and robbing tenants. The landlord is not expected to provide protection commonly owed by a municipal police department; but as illustrated in this case, he is obligated to protect those parts of his premises which are not usually subject to periodic patrol and inspection by the municipal police."

*Id.* at 487. This case does not place any physical limitations on a landlord's duty of care to his tenants; in fact, it recognizes an affirmative duty to take precautionary measures in areas within the landlord's con-

trol. *Kline* thus supports the plaintiffs as much as it supports the defendants.

In *Semmelroth* the defendant invited the plaintiff's decedent, a travel agent, to take an expense-paid trip to Acapulco, Mexico, where the defendant owned and operated certain hotels. The complaint alleged that, at the time of the trip, the defendant was aware that the area around Acapulco was overrun by armed bands of guerillas and was dangerous for foreign visitors. During his visit, the decedent was killed by unknown assailants. Because the complaint did not allege that the murder occurred while the decedent was on the defendant's airplanes or its hotel premises, the district court granted the defendant's motion to dismiss for failure to state a claim. The court stated:

> "The Restatement (Second) of Torts § 314A lists four special relations that give rise to a duty to protect another from harm. The first three relationships are carrier-passenger, innkeeper-guest and business inviter-invitee. Comment c to § 314A, however, limits liability to times when the passenger is within the vehicle, when the guest is on the premises and when the invitee is upon the premises of the landowner. *See also, Mitchell, supra.* Plaintiff has not alleged that the murder occurred while the decedent was on the airplane or while he was on defendant's premises. Thus, these relationships do not apply to the present case."

448 F.Supp. at 732. Except for its reference to the Restatement, the case has little or no relevance to the instant case; the argument analogous to the plaintiff's argument in *Semmelroth* would be that Hyatt owed a duty of care to a guest assaulted on Bourbon Street.

*Stedman v. Spiros,* 1959, 23 Ill.App.2d 69, 161 N.E.2d 590, another Illinois case, involved injury to a hotel guest through a natural defect in certain land. In that case, the defendant's hotel was a lodge located in a 700-acre state park. The defendant's lease was limited, however, to the building and the land immediately surrounding it. While a guest at the hotel, the plaintiff

walked about 50 feet from the boundary of the hotel premises to a precipice in the state park to admire a view. While he was standing there, the land underneath him collapsed and he sustained a serious fall. The court refused to impose liability on the hotel:

"In the present case, the area upon which plaintiff ventured forth and met severe injuries was not occupied or controlled by the defendant and was not under his jurisdiction, but rather that of the State of Illinois. To hold defendant liable upon the facts stated in the Amended Complaint would be a radical departure from existing law in this State which we regard as sound."

*Id.* at 86, 161 N.E.2d at 599. In reaching its conclusion, however, the court stated specifically that "[t]he possessor of premises is under the duty to provide reasonably safe means of egress and ingress for the invitee". *Id.* at 81, 161 N.E.2d at 596. "The issue presented here", the court continued,

"is how far beyond the premises over which the defendant had possession and control does defendant's duty of due care extend to provide a reasonably safe means of ingress and egress for plaintiff. Clearly, if the brink of the precipice were a step or two from the defendant's door, or from the stone patio to which defendant's door opened, we would have a different case than is now presented to us."

*Id.* at 83, 161 N.E.2d at 597.

We are not persuaded by the defendants' citations; the plaintiffs' cases are closer in point and closer home. *Cothern v. LaRocca,* 1970, 255 La. 673, 232 So.2d 473, involved a restaurant abutting a motel. A patron of the restaurant had parked his automobile half on the restaurant's property and half on the motel's property. As the patron's wife left the car on the motel's property, she twisted her leg in an open hole. The Louisiana Supreme Court held that, in the factual circumstances of this case, the restaurant owner owed no duty to its invitee:

"LaRocca, the restaurant owner, did not know that invitees of the restaurant sometimes parked on the motel property.

No invitation, either implied or expressed, had been extended to his invitees to use the abutting premises. He did not know of the existence of the uncovered hole on the adjacent premises and could not, even with reasonable inspection from his own premises, have readily, if at all, discerned the hole in the tall grass. We conclude that under these facts LaRocca owed no duty to protect Mrs. Coth[er]n from this unknown defect on the adjoining property."

*Id.* at 687–88, 232 So.2d at 478. The necessary implication is that, had the owner invited his patrons to use the adjacent property, or known that they sometimes did, and knew or should have known of the dangerous condition, the court would have found that the owner owed a duty of care to the invitee.

In *Lowe v. Thermal Supply, Inc.,* La.App. 2 Cir.1970, 242 So.2d 351, the court found such a duty. *Lowe* involved a refrigeration supply store located in front of a vacant lot. The lot was owned by an unnamed third party. The evidence showed that on several occasions the defendant would leave refrigeration parts in the rear of its place of business to be picked up by its customers. The only way to reach this area was to go through the vacant lot. While proceeding through the lot to pick up some parts, the plaintiff's feet became entangled in the grass and she was injured. The court held that the plaintiff was an invitee and that the defendant therefore owed the plaintiff a duty to correct hidden defects or to warn the plaintiff of the defects. *Id.* at 352. The court held for the defendants, however, on the ground that the plaintiff was contributorily negligent.

Chief Justice (then Judge) John Dixon pointed out in dissent:

"There is a recent case involving injury on nonowned property which indicates that there might be liability if the dangerous condition to which a customer is exposed is known to the business inviting the customer, even though the dangerous condition is not on land owned or leased by the business establishment. See *Cothern v. LaRocca,* 255 La. 673, 232 So.2d 473 (1970).

"The evidence is sufficient to show that the employees of Thermal Supply knew about the high grass. I am convinced that the tall, thick grass caused Mrs. Lowe to fall, and the defendant did not carry the burden of proving her contributory negligence."

*Id.* at 353 (Dixon, J., dissenting).

These two decisions suggest that Louisiana courts take a broad view of the duty of care owed to an invitee by an owner or possessor of land when the danger to the invitee is located on adjacent land, at least when injury occurs on the access to the owner's business. A similar perspective is suggested in *Rozelle v. Employers' Liability Assurance Corp.,* La.App. 2 Cir.1972, 260 So.2d 757, *writ denied,* 261 La. 1068, 262 So.2d 45. In that case, which involved a slip-and-fall injury occurring in the entrance way to a store, the court held that a business's duty of reasonable care to invitees "extends to the entranceway of a store as well as to the interior of the store". 260 So.2d at 759. It is likely that the Louisiana Supreme Court had these cases in mind when it denied certification in the present case.

Decisions from other jurisdictions have gone far in applying the duty of care to invitees. In *Shields v. Food Fair Stores, Inc.,* Fla.App.1958, 106 So.2d 90, *cert. denied,* Fla.1959, 109 So.2d 168, the court addressed the liability of a store for an injury occurring in the entrance way to the store's parking lot. The trial court dismissed the complaint. The appellate court reversed, holding that:

"The duty owed to invitees by an occupier of premises to maintain them in a reasonably safe condition includes and extends to approaches to the premises which are open to invitees in connection with their business on the premises, and which approaches are so located and constituted as to represent an invitation to visit the place of business and to use such means of approach."

*Id.* at 92 (citations omitted).

In *Tarshis v. Lahaina Investment Corp.,* 9 Cir.1973, 480 F.2d 1019, the guest of an Hawaiian resort beach hotel sued the hotel for a swimming injury that occurred in the ocean surf in front of the hotel. Reversing the district court's summary judgment of dismissal, the Court of Appeals held that the hotel had a duty to warn its guests and patrons of the dangerous conditions in the ocean along its beach frontage "which were not known to [the plaintiff] or obvious to an ordinarily intelligent person and either were known or in the exercise of reasonable care ought to have been known to the [hotel]". *Id.* at 1020.

Finally, in *Great Atlantic & Pacific Tea Co. v. Pederson,* 1 Cir.1957, 247 F.2d 4 (per curiam), the Court refused to upset a jury verdict finding the defendant liable for injuries to the plaintiff that occurred when the plaintiff fell on an unlighted ramp that was not part of the defendant's premises. The Court stated that:

"We are satisfied that this was a routine case where the issues of negligence and contributory negligence were properly left to the jury. It was of course unimportant that the concealed ramp, into which the plaintiff fell, was not in the occupation and control of the defendant as lessee. As the Supreme Judicial Court stated in *Carleton v. Franconia Iron & Steel Co.,* 1868, 99 Mass. 216, 217:

'The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land *or of the access to it,* which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of.'"

247 F.2d at 5 (emphasis added).

Though we have not located any case on all fours with the case at bar, we find that the cases lend greater support to the plaintiffs' position than they do to the defendants' position. We are convinced that, at least under Louisiana law, the duty

of a business to protect invitees can extend to adjacent property, particularly entrances to the business premises, if the business is aware of a dangerous condition on the adjacent property and fails to warn its invitees or to take some other reasonable preventive action. As an innkeeper, Hyatt is potentially liable not only for dangerous physical conditions, but also for foreseeable criminal assaults by third persons. Hyatt clearly was aware of the risk of criminal assault that its guests faced in the immediate area surrounding the hotel, especially at the Poydras Street entrance. Hyatt did take preventive action, although the jury found, not irrationally, that Hyatt did not do enough. The caselaw supports the conclusion that there is no legal bar to finding Hyatt liable for Dr. Banks's death. This conclusion is supported also by the policies underlying tort liability, to which we now turn.

### 3. Policies of Tort Liability

The law of torts has never stood still. Section 314 of the first Restatement of Torts, stating the law as the American Law Institute perceived it in 1934, laid down the rule that an "actor" is under no duty to act to protect another even though such action could and may be necessary to prevent injury to the other. Thirty years later, a culture aware of the increasing complexity of society and the concomitant increasing interdependence of social actors could no longer tolerate that rule. The ALI added section 314A to the Restatement, which recognizes three important exceptions to the general rule.

The essence of section 314A of the Restatement is the recognition that a duty to protect may arise out of a special relation between one actor and another. "If the conduct of the actor has brought him into a human relationship with another, of such character that sound social policy requires either some affirmative action or some precaution on his part to avoid harm, the duty to act or take the precaution is imposed by law." Harper & Kime, *The Duty To Control the Conduct of Another,* 43 Yale L.J. 886, 886 (1934). As is not unusual, and as

Harper and Kime point out, Justice Cardozo led the way:

> "Given a relation involving in its existence a duty of care . . ., a tort may result as well from acts of omission as of commission in the fulfillment of the duty thus recognized by law. What we need to know is not so much the conduct to be avoided when the relation and its attendant duty are established as existing. What we need to know is the conduct that engenders the relation. It is here that the formula, however incomplete, has its value and significance."

*Moch Co. v. Rensselaer Water Co.,* 1928, 247 N.Y. 160, 167, 159 N.E. 896, 898.

Because an innkeeper's duty to protect its guests is relational, it follows that the duty should exist only when the relation exists and when the risk of injury arises in the course of the relation. This rationale underlies the Restatement's limitation of the duty to the premises of the innkeeper. *See* Restatement (Second) of Torts § 314A comment c (1965). We find this limitation to be an artificial legal boundary, and decline to adopt it.

Tort law has become increasingly concerned with placing liability upon the party that is best able to determine the cost-justified level of accident prevention. *See* G. Calabresi, *The Costs of Accidents: A Legal and Economic Analysis* (1970); Calabresi & Hirschoff, *Toward a Test for Strict Liability in Torts,* 81 Yale L.J. 1055, 1060 (1972); Posner, *A Theory of Negligence,* 1 J. Legal Stud. 29, 33 (1972). Holding a negligent innkeeper liable when there is a third-party assault on the premises is sensible, not because of some abstract conceptual notion about the risk arising within "the course of the relation", but because the innkeeper is able to identify and carry out cost-justified ("reasonable") preventive measures on the premises. If the innkeeper has sufficient control of property adjacent to his premises so that he is capable of taking reasonable actions to reduce the risk of injury to guests present on the adjacent property, the innkeeper should not be immune from liability when his failure to take

such actions results in an injury to a guest. As between innkeeper and guest, the innkeeper is the only one in the position to take the reasonably necessary acts to guard against the predictable risk of assaults. He is not an insurer, but he is obligated to take reasonable steps to minimize the risk to his guests within his sphere of control.

The security measures adopted by Hyatt, especially the "perimeter patrol", demonstrate that Hyatt had the power to take preventive action within the immediate surrounding area. As noted above, the jury found that Hyatt did not go far enough. Allowing the jury's finding of negligence to stand should induce Hyatt to determine and to put in effect cost-justified preventive measures covering both the premises of the hotel and such adjacent areas as are sufficiently within its control to permit reasonable preventive action.

## IV. CONCLUSION

Our decision in this case is strongly influenced by the peculiar facts with which we are presented. Dr. Banks's death occurred only four feet from the entrance doors to the mall and hotel, underneath an overhang that is actually the second floor of the complex. The defendants were aware of the crime problem in the plaza complex and its immediate environs, and were capable of taking reasonable action to reduce the risk to guests and invitees in these areas.

We affirm the judgment n.o.v. in favor of Refco, because that defendant's duty of care to invitees does not include a duty to adopt precautionary measures to reduce the general risk of criminal assault. Hyatt's duty to its guests, however, does embrace a responsibility to take reasonable precautionary measures. We reject Hyatt's argument that its duty cannot, as a matter of law, extend to the location of Dr. Banks's death. Dr. Banks did not make it through the entrance doors to the complex. We refuse to transform those doors into an impregnable legal wall of immunity.

The judgment of the district court is AFFIRMED.