599 So.2d 412 (1992)
Robert DYE, Robert Dye, II, and Lowell Dye
v.
SCHWEGMANN GIANT SUPER MARKETS, INC.
No. 91-CA-1456.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1992.
Rehearing Denied June 17, 1992.
*414 Wayne J. Lee, Kyle D. Schonekas, Mary L. Dumestre, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for Schwegmann Giant Super Markets, Inc.
Gilbert V. Andry, III, Jerald N. Andry, Andry & Andry, New Orleans, for Robert Dye, Robert Dye, II and Lowell Dye.
Before KLEES, CIACCIO and WARD, JJ.
WARD, Judge.
Robert Dye and his two sons sued Schwegmann Giant Super Markets, Inc., alleging Schwegmann's negligence caused the death of Mrs. Delores Dye, his wife and their mother, who was murdered while resisting an armed robber in the parking lot of the Schwegmann Gentilly store. Plaintiffs contend that particular parking lot at this store presented an unreasonably dangerous risk of harm because of the numerous armed robberies and assaults that had occurred there. Because of this risk they contend Schwegmann had both a duty to warn of the danger of robberies and assaults and a duty to protect Mrs. Dye from them, and because Schwegmann breached both duties they argue Schwegmann was negligent. Schwegmann denied negligence, claiming it provided reasonable security.
The jury made a finding of fact that Schwegmann was not negligent, rejecting plaintiffs' claims. Plaintiffs' motions for a judgment notwithstanding the verdict and new trial were denied, and the trial court made the jury verdict the judgment of the court. Plaintiffs have appealed, asking this court to set aside the jury's finding of fact, to make an independent factual finding that Schwegmann was negligent, and to render a verdict casting Schwegmann liable for damages to be determined by this court in accord with the evidence presented during trial.
Plaintiffs contend that such a result would be justified because the trial court's jury instructions were erroneous and because the trial court allowed inadmissible evidence to go to the jury. They contend that these trial errors caused the jury to reach an erroneous verdict.
If error misled the jury, then this court must set aside the verdict and if the record permitsif it is completethen this court must make its own findings of fact and render a verdict. If, however, there is no error, or if the error did not induce the jury to reach an erroneous verdict, then the jury findings and verdict are entitled to deference, and the standard of review is whether those findings were manifestly erroneousnot supported by the record.
Schwegmann argues that the jury instructions were correct, and even if they were not entirely correct, they did not mislead the jury and its verdict was correct. As a consequence, they argue, the question is whether the jury's finding and verdict *415 were manifestly erroneous. Schwegmann argues they are not.
We find no trial error that would justify setting aside the jury's findings. Those findings are not manifestly erroneous, they are supported by the evidence, and we therefore affirm.
Generally neither the owner of land nor of a business owes a duty to protect patrons from criminal acts of a third person. An exception has been fashioned by appellate courts where the situation between the owner and a patron indicates that the patron has entrusted his security to the proprietor. Typically, these are businesses like common carriers and innkeepers. The duty to protect has never been extended as far as we know to grocers. There is only a duty to act reasonably, and in some cases this may include a duty to take some protective measures. In this case, however, plaintiffs seek to extend the duty of a grocer to both warn of the danger of criminal activity and to protect against it, and they argue there is a duty to do both. This issue is raised by plaintiffs' complaint that the trial court erred by refusing to instruct the jury that Schwegmann owed a duty to warn of the dangers of armed robberies and assaults.
Plaintiffs, relying on Sutter v. Audubon Park Commission, 533 So.2d 1226 (La.App. 4 Cir.1988), maintain that a duty to warn existed because of the foreseeability of such crimes in the parking lot. But Sutter has never said there was a duty to warn. Sutter did say that existence of a duty depends upon the circumstances, and when there is an unreasonable danger there may be a duty to take protective measures, but Sutter held that the Park did not present an unreasonable danger to park patrons. Sutter pointed out that whether a landowner owes a duty depends on particular facts, citing our Louisiana Supreme Court's decision of Shelton v. Aetna, 334 So.2d 406 (La.1976). Shelton described a duty to discover an unreasonably dangerous condition on the premises and to either correct the condition or warn of its existence, referring to paint remover residue which had oozed from a garage onto a walkway on the premises. Shelton also makes clear that the Court is speaking of a duty to discover, correct, or warn of conditions which can not be readily observed by reasonable individuals. That type of danger does not fit the description of crime today; the danger of robbery and other crimes is unfortunately commonplace, known to all reasonable people. Plaintiffs also rely on Banks v. Hyatt Corp., 722 F.2d 214 (5th Cir.1984). That reliance is misplaced, however, because Banks, while discussing the duty owed by innkeepers, said that innkeepers "owe their guests a duty of care higher than ordinary or reasonable care.", and also said that the duty of a landowner is either "to warn its invitees or to take some other reasonable preventive action ...". 722 F.2d at 226. (emphasis added) Plaintiffs have not shown any authority to support their claim that landowners, proprietors, or grocers in particular have a duty to warn of inarticulate potential crimes, and we do not find any.
Moreover, even if there is an unreasonable danger it does not follow that there is a duty to both warn and protect. Shelton requires a landowner to warn or to correct, Sutter says a landowner must act reasonably, that is "take protective measures", Banks requires innkeepers to warn or protect. Neither Shelton nor Sutter nor Banks require landowners, parks or even innkeepers to do both. We therefore disagree with plaintiffs; if there is a duty it is a duty to act reasonably, and that may be to warn or to protect, but there is no duty to do both, and the trial court correctly denied plaintiffs' requested instructions.
If a business assumes an obligation to protect its patrons, this obligation must be performed with reasonable care, without negligence. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, (La. 1984); Toups v. Hawkins, 518 So.2d 1077, 1081 (La.App. 5 Cir.1987). Since Schwegmann undertook the duty to protect, the only question is one of factdid it do so in a reasonable manner or did it breach that duty? It was sufficient for the trial court to instruct the jury that since Schwegmann *416 assumed the duty to protect it had to act reasonably.
Next, plaintiffs argue the trial court's instructions to the jury were wrong because they were confusing, indicating that Schwegmann could have discharged any duty it had by merely calling the police. The trial judge rejected both parties' proposed jury instructions on duty and instead fashioned his own. The plaintiffs complain that the underlined passage in the instructions set out below was improper:
With respect to the type of case, you should also consider the following rules of law in determining whether or not the defendant is negligent and whether or not the decedent is guilty of contributory negligence.
The plaintiffs have alleged that the defendant negligently failed to provide adequate security in its parking lot. Generally, there is no duty to protect others from the criminal activities of a third person. However, owners of businesses who permit the public to enter their establishments have a duty to exercise reasonable care to protect those who do enter. This duty extends to keeping the premises safe from unreasonable risks of harm. And if the independent criminal acts of a third person constitute the unreasonable risk, this duty does not require the proprietor to risk physical injury or civil or criminal liability by physical intervention. Rather, the duty can be discharged by the summoning of those entrusted by law with the power of immediately maintaining the peace, the police, at the time the proprietor knows or should reasonably know of the third person's intention and apparent ability to execute the intended acts.

However, when a duty to protect patrons against such criminal misconduct has been assumed, liability may be created by a negligent breach of that duty.
The trial court quite obviously relied on jury instructions approved by the Supreme Court in Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981). Plaintiffs argue the fact situation here does not even remotely resemble the fact situation of Rodriguez, and that the jury was misled by instructions which seem to indicate that Schwegmann knew that armed robbery was occurring and all it had to do was call the police. We agree that the instructions contained surplusage; we do not agree that this error requires reversal. The remaining part of the jury instruction directs the jury's attention to the appropriate facts:
"However, when a duty to protect patrons against such criminal misconduct has been assumed, liability may be created by a negligent breach of that duty."
When the instructions are taken as a whole and considered with the evidence presented, the jury could not fail to understand that when Schwegmann provided security it undertook a duty to protect its customers, and the only question then was did Schwegmann discharge its duty reasonably. In other words, the trial court's instructions could not have diverted the jury's attention from the question of whether Schwegmann was negligent to a question of whether Schwegmann summoned the police.
Additionally when considering jury instructions the question of whether reversible error occurred is whether the jury was misled to such an extent as to prevent it from doing justice. Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5 Cir. 1983), writ denied, 434 So.2d 1097 (La. 1983). Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. In making his charges to a jury, a trial judge is not required to give the precise instructions submitted by either party, but must give instructions which properly reflect the law applicable in light of the facts of the particular case. Cuccia, supra. The adequacy of the jury instructions given by a trial court must be determined in the light of jury instructions as a whole. Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury *417 from reaching a verdict based on the law and facts. Thus, on appellate review of a jury trial the mere discovery of an error in the judge's instructions does not of itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. Jones v. Liberty Mutual Ins. Co., 568 So.2d 1091 (La.App. 5 Cir.1990).
While it is true in this case that some of the instructions were not appropriate to the factual situation, the instructions when taken as a whole were adequate to inform the jury of the questions presented for their consideration. Moreover, plaintiffs did not object to the instructions during trial.
In addition to arguing that the instructions were wrong, plaintiffs also argue that the trial court erred by permitting the jury to hear evidence showing Mrs. Dye "assumed the risk" or was herself guilty of negligence by resisting. Again, if trial error caused the jury to reach an erroneous verdict then the jury's findings of fact and its verdict should be disregarded, and this court should independently make its own findings and render its own verdict. Three persons witnessed the attack on Mrs. Dye. All agreed that she offered some resistance. The testimony particularly objected to by the plaintiffs is that of "Schwegmann's eye witness", Edward Williams. Williams testified that the man who killed Mrs. Dye approached her as she was opening the driver's side door of her car. The man "discussed some words with her and began to chase her around the car. They went around the car about three times ... He caught her the first time. As he grabbed her, she struggled and began to beat him with the keys like in the face and in his chest area ... She got away from him at one point. She ran around to the passenger side of the car. And he came around and grabbed her again and brought her back to the driver's side ... He was still attempting to release the key from her hand. And she was using the keys as a weapon ... She was jigging them in his face and his chest ... She jugged him 6-12 times ... After she broke away from the man when she was on the passenger side of her car, he brought her back and some more words were exchanged. And she wouldn't release the keys. And he reached into his pocket for a revolver and he put it directly to her head and shot." The evidence was certainly admissible as relevant evidence to show the circumstances of the crime. If it is admissible for any one reason then an opposing party's objection must be overruled. It was also admissible to show absence of cause in fact, or for allocation of fault or mitigation of damages. Roberts v. Tiny Tim Thrifty Check, 367 So.2d 64 (La.App. 4 Cir.1979).
Plaintiffs argue that the trial court's decision to permit Schwegmann to elicit "expert" testimony from New Orleans Police Officer Paul Pellegrin was clearly wrong. Schwegmann tendered Officer Pellegrin as an expert in crime prevention and "victim response". He was a 16 year veteran of the police force with no specialized training, other than on the job experience. The trial court accepted him as an expert, and permitted him to give an opinion that Mrs. Dye's response was inappropriate. Nevertheless, the trial court also told the jury that it may accept or reject that testimony, and the question of whether a witness is an expert, the scope of his expertise, and the breadth of his opinion are for the most part within the discretion of the trial judge, C.E. art. 702; comment (d). Any error is harmless because the jury never reached the issue of victim fault. It found Schwegmann was not negligent.
Since we do not find there was trial error either in the jury charges or in evidentiary rulings, at least not reversible error, the next issue is whether the jury's finding that Schwegmann was not negligent is manifestly erroneous. Once a business owner assumes an obligation to protect patrons, this obligation must be performed with reasonable care. Toups v. Hawkins, 518 So.2d 1077 (La.App. 5 Cir. 1987). In other words to be actionable, a "breach must be negligent, substandard or blameworthy." Harris v. Pizza Hut of *418 Louisiana, Inc., 455 So.2d 1364, 1371. There was testimony to support the jury's finding and there was testimony to discredit it. The testimony in support of it shows that Schwegmann employed at its Gentilly store a Director of Safety who administered the security operations for the entire Schwegmann chain. Also at the Gentilly store a Supervisor of Security trained an in-house security force who are under the supervision of a security chief directly responsible for security at that store. Inside and outside guards patrol the store and the parking lot, the outside guards wear uniforms. Supervisors and plainclothes officers make periodic checks of the parking lot to make sure that outside guards are patrolling as directed, and to serve as backup for outside guards. At any given time there are from four to eight outside guards, however, at the time of Mrs. Dye's murder, there were only four scheduled to work. Of those four, two were inside the store and the other two were outside, one patrolling on foot and the other on a motorized scooter.
The jury was given interrogatoriesten questions. The first question, and the only one they answered, asked Was Schwegmann negligent? The jury responded "No." After that no other question had to be considered, and no matter what view one takes of the jury's answer the record will support the jury's finding of fact and it is not manifestly erroneous. A reviewing court should not set aside a finding of fact in the absence of "manifest error", and where there is a conflict in the testimony reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even if the reviewing court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). The jury's finding was not manifestly erroneous.
Finally, plaintiffs argue the trial court abused its discretion in denying the plaintiffs' motions for judgment notwithstanding the verdict or for a new trial. This court in Blum v. New Orleans Public Service, Inc., 469 So.2d 1117, 1119 (La.App. 4 Cir.); writ denied, 472 So.2d 921 (La.1985) held:
In ruling on a motion for judgment notwithstanding the verdict, pursuant to L.S.A.-C.C.P. Art. 1810.1 (now substantially reenacted in L.S.A.-C.C.P. Art. 1811), the trial judge considers all of the evidence and reasonable inferences in a light most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict, the motion should be granted and the trial judge should render a judgment notwithstanding the jury's findings. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions, the motion for judgment N.O.V. should be denied. In applying this standard, the court does not weigh the evidence, pass on credibility of the witnesses, or substitute its factual judgment for the jury's.
Applying those standards to the instant case, we cannot conclude that the trial judge erred in denying the motion for judgment notwithstanding the verdict.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
KLEES, Judge, dissenting.
I disagree with the majority's conclusion that the "surplusage" in the jury instructions does not constitute reversible error. The jury was never told that the proprietor of a business has a duty to take measures to protect its patrons from criminal attacks by third parties if such criminal acts are reasonably foreseeable under the circumstances. See Sutter v. Audubon Park Commission, 533 So.2d 1226, 1231 (La. App. 4th Cir.1988); Phillips v. Equitable Life Assurance Co., 413 So.2d 696 (La.App. 4th Cir.1982), writ denied, 420 So.2d 164 (La.1982). Instead, the jury was given a factually inappropriate instruction from Rodriguez v. New Orleans Public Service, *419 Inc., 400 So.2d 884 (La.1981), to the effect that, if the criminal activity constituted an unreasonable risk, Schwegmann could discharge its duty by summoning law enforcement officials.
I believe that this instruction, which the majority admits was "not appropriate to the factual situation" could have significantly misled the jury. Moreover, I do not agree with the majority's conclusion that any confusion created by the inappropriate jury instruction was cured by the inclusion of an additional instruction that when one has assumed a duty to protect, liability may be created by a negligent breach of that duty. In such a close decision, with the jury's verdict being nine to three, I find that the giving of an erroneous jury instruction on the crucial issue of the defendant's duty to the plaintiff deprived the plaintiff of a fair trial. I would remand the matter for new trial.
Accordingly, I respectfully dissent.