Philip Aaron BANKS, et al., Plaintiffs-Appellees Cross Appellants,

v.

HYATT CORPORATION, Defendant-Appellant Cross Appellee.

Refco Poydras Hotel Joint Venture, Defendant-Appellee.

No. 81–3377.

United States Court of Appeals, Fifth Circuit.

June 27, 1983.

Bienvenu, Foster, Ryan & O'Bannon, Robert N. Ryan, New Orleans, La., for defendant-appellant, cross appellee.

Stephen J. Crimmins, New York City, for amicus curiae, American Hotel & Motel Assoc.

Murray, Murray, Ellis, Braden & Landry, Stephen B. Murray, New Orleans, La., for Banks.

Boggs, Loehn & Rodrigue, Charles A. Boggs, New Orleans, La., for plaintiffs-appellees, cross appellants.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

PER CURIAM:

This appeal presents important issues of Louisiana law that are more appropriately resolved by the Louisiana Supreme Court. A lawsuit was filed by the family of Dr. Ronald Banks in the United States District Court for the Eastern District of Louisiana against Hyatt Corporation (Hyatt), and Refco Poydras Hotel Joint Venture (Refco). It is a diversity action seeking recovery for damages for the wrongful death of Dr. Ronald Banks who, on April 12, 1979, was shot and killed during the course of an attempted armed robbery. The crime occurred on a sidewalk only a few feet outside the Loyola Avenue entrance to the Poydras Plaza Shopping Mall and the Hyatt Hotel. Dr. Banks was a registered guest at the Hyatt at the time of the incident. He was attending a convention of the Organization of American Historians.

The attempted armed robbery and shooting occurred when Dr. Banks and a companion, John Hakola, were returning to the Hyatt from the French Quarter where they had eaten dinner. The excursion into the French Quarter began when they left the hotel and mall and departed through the Loyola Avenue doorway. En route from dinner back to the hotel, Dr. Banks and his companion, Mr. Hakola, decided to walk, electing to travel side streets rather than major thoroughfares in order to observe certain architecture in which they were both interested. As the two were walking on the sidewalk toward the glass doors at the Loyola Avenue entrance, they were approached by two young males. One of the young males produced a pistol and demanded cash. Mr. Hakola heard Dr. Banks say, "you've got to be kidding", or words to that effect. Mr. Hakola lashed out at the unarmed assailant, reached out and opened the door closest to him and ran into the mall. He managed to get approximately

15–20 feet inside the mall when he heard the sound of gunfire. Dr. Banks had been shot.[1]

A security officer wearing a Hyatt blazer was on patrol in the second floor mall area. He heard the shots and ran down the stairs to the scene of the crime where he found Dr. Banks lying on the sidewalk. Dr. Banks' body lay stretched out on the sidewalk with his feet four feet from the door and his head extended in the direction of Loyola Avenue. Shortly thereafter other Hyatt security officers and members of the New Orleans Police Department arrived in response to the guard's call to Hyatt's security office.

Refco is the owner of the building which houses the Hyatt Hotel and the shopping mall. At the Loyola Avenue entrance, the building is a rectangular, two-story structure with long sides running perpendicular to Loyola Avenue. It is located approximately in the middle of the block between Poydras and Girod Streets. The hotel is located in the highrise portion of the building which Hyatt leases from Refco. The hotel portion of the building is located between the shopping mall and a raised walkway leading to the Superdome. The walkway from Loyola Avenue to the Louisiana Superdome is a public servitude of passage, contractually acquired from Refco by the City of New Orleans and the Louisiana Stadium and Exposition District. As one enters into the mall, inside the building, the servitude is at the ground floor level until one reaches two sets of stairs and escalators. At that point, one must ascend to the second floor level where all of the shops are located. At the time of Dr. Banks' shooting, around 9:30 p.m., only three shops on the mall were open for business.

As one traverses the mall on the second floor level, he encounters the highrise portion of the structure leased by Hyatt from Refco and operated by Hyatt as a hotel. It is located approximately one-half block from the Loyola Avenue entrance. No part of the structure which is open to the public and operated by Hyatt as a hotel is located on the second floor level.

The walkway divides in two and passes around a set of elevator banks, a stairwell and escalators leading to the highrise structure. The two halves of the passageway rejoin on the Superdome side of the elevator banks and continue at the same elevation in the form of an open-air, elevated walkway to the Louisiana Superdome. In order for a guest or visitor of the Hyatt to reach any portion of the hotel structure from the second floor level, he must descend the stairwell, escalators or elevators. The escalators are to the side and a short distance from the elevator bank. They service only the second and third levels.

On descending, one would be in the ground level registration area of the hotel, located on the Superdome side of the highrise structure. This registration area is part of the premises leased by the Hyatt from Refco. The entire mall area subject to the servitude of passage is open to the public and hotel guests alike. Based on the public servitude of passage, the City of New Orleans once filed suit to prohibit the locking of the glass doors leading to the open-air walkway to the Superdome. The area was open to the public twenty-four hours per day throughout the year. It was estimated that approximately four million people passed through the mall yearly and that the Hyatt accommodates approximately five hundred thousand registered guests and visitors per year.

There are no signs or other lines of demarcation which would affirmatively indicate to a hotel guest that he or she was leaving the hotel premises and entering the shopping mall. In fact, Mr. Hakola testified at the trial that he believed that he was still within the hotel when he was traveling through the mall. Prominently located above the Loyola Avenue entrance to the mall and hotel, however, was a marquee which bore in large letters the legend

1. The perpetrators of this violent crime have since been apprehended, convicted and imprisoned.

"Hyatt Regency". "Poydras Plaza" and "Superdome" also appear over the doors of the Loyola Avenue entrance on either side of the "Hyatt Regency" legend.

Because crime in the area was unfortunately frequent, security services had to be provided. At the time of Dr. Banks' shooting, security for the mall and the hotel was provided by Hyatt. Hyatt and Refco had entered into a written agreement whereby Hyatt would provide the security for the mall and hotel complex. All of the security officers were paid directly by check issues from the Hyatt. (Pursuant to the security contract, Hyatt billed Refco for the cost of mall security officers.) Security officers wore Hyatt hotel blazers and carried Hyatt security radios so that they could be in contact with the central Hyatt security office.

In addition to mall and hotel security officers, Refco, Hyatt and three other property owners in the square, decided to form what is called a "perimeter patrol". This security measure was taken because of the perceived increase in the frequency of criminal activity occurring around the complex. The catalyst for the "perimeter patrol" came when Hyatt's head of security sent a letter to the New Orleans police chief detailing several occurrences of criminal activity around the hotel and requesting additional city police protection. When this request was denied, Refco, Hyatt and the three other property owners, decided to hire off-duty uniformed and armed New Orleans Police Department Officers to patrol the perimeter of the property on a 24 hours basis. This "perimeter patrol" began functioning approximately three weeks before Dr. Banks was murdered.

Prior to the genesis of the "perimeter patrol", the entire hotel mall complex had a history of criminal activity occurring within its surrounding area. This activity included eleven armed robberies and five simple robberies within a three month period preceding Dr. Banks' murder. From the time the hotel opened in 1976, Dr. Banks was the second visitor to the premises to be shot at the Loyola Avenue entrance in an armed robbery attempt and the fifth victim of an armed robbery at that location.

Neither Hyatt nor Refco provided any warning to their guests and visitors about this criminal activity unless they were specifically asked. Due to the high instance of crime in the area, Hyatt security officers offered escort services to hotel and mall employees leaving the hotel to go to their automobiles or bus stops. Guests of the hotel were not aware of this service unless they specifically inquired to request its use. However, many of the security officers would of their own volition suggest to hotel guests who appeared particularly "vulnerable" that they use taxicabs at night rather than walk to the adjacent business or French Quarter area.

Subsequent to the advent of the "perimeter patrol", criminal activity in the area seemed to dissipate. Between its implementation and the date of Dr. Banks' murder, there was one criminal occurrence on the perimeter of the property—a purse snatching. It did not occur near the Loyola Avenue entrance, however. The cost of the "perimeter patrol" was divided equally between Hyatt, Refco and the three property owners. No doorman was assigned to the Loyola Avenue entrance to the complex. A security officer would patrol the entire mall area at various intervals. Hyatt maintained a closed circuit television system monitoring various public areas of the hotel but there was no television monitor at the Loyola Avenue entrance to the complex.

At trial, the district court charged the jury, *inter alia,* that an innkeeper was not an insurer of the safety of its guests against tortious acts by third persons but that the innkeeper is bound to exercise *reasonable care* in the protection of its guests.[2]

2. In offering an instruction using the reasonable care standard, the district court did not have benefit of the recent decision of the Louisiana Supreme Court in *Kraaz v. La Quinta Motor Inns,* 410 So.2d 1048 (La.1982), where the court stated that an innkeeper owes a high degree of care and protection to its guests. Thus, by its verdict in favor of the plaintiffs, the jury found Hyatt liable even under the lesser standard of care.

No geographical restriction was placed on Hyatt's duty of care in this instruction. As to Refco, the trial court instructed the jury that the duty of care owed by Refco to protect its invitees against assaults by third persons extended only to property owned by Refco.

The jury found both Hyatt and Refco to be negligent, which negligence proximately caused the death of Dr. Banks. Motions for directed verdict were made by both Refco and Hyatt. Each was denied. Following the jury's verdict, both defendants filed motions for j.n.o.v. Hyatt's was denied. Refco's was granted.

This case is appropriate for certification to the Louisiana Supreme Court. There is no controlling precedent in the decisions of the Louisiana Supreme Court which would flatly govern all aspects of this case. Under these circumstances, we elect to certify certain questions to the Louisiana Supreme Court pursuant to Louisiana Supreme Court Rule 12. Following our usual practice of requesting that counsel submit a joint statement of facts and propose an agreed certificate of questions, *see West v. Caterpillar Tractor Co.*, 504 F.2d 967 (5th Cir. 1974), we certify the following questions to the Louisiana Supreme Court:

1. Does an innkeeper have a duty to protect its guests from assaults or injury by third persons, either by warning or by employing other security measures, when it knows, or in the exercise of the standard of care prescribed in subparagraph A, should know, that it is possible that injury may occur within the immediate environs of the hotel?

   A. If so, what is the degree of care owed: Is it a high degree of care or is it a reasonable degree of care?

   B. If so, within what geographical limits does this duty of care exist?

   C. How immediate must the threat of harm, or how foreseeable must the threat of harm be in order for the duty to come into existence?

2. Is a mall or building owner in whose building an inn is located under a duty of care to protect its invitees, including those persons on its property and those about to enter its building, either by warning or by taking alternative security measures, from assaults or injury by third persons when it has knowledge or should have knowledge, in the exercise of the degree of care prescribed in subparagraph A, that it is possible that an injury or an assault might occur within the close surroundings of the mall or building?

   A. If so, what is the duty of care owed: Is it a high degree of care or a reasonable degree of care?

   B. If so, within what geographical limits does such a duty of care exist?

   C. How immediate or foreseeable must the threat of harm be in order for the duty of care to come into existence?

The entire record in this case, the district court's instructions, together with copies of the briefs of the parties, the certification letter directive, counsel's memorandum on certification, proposed certification issues and facts and all other papers are to be transmitted to the Louisiana Supreme Court with this certificate.

With the understanding that the Louisiana Supreme Court is not in any way restricted, limited, or otherwise handicapped in our articulation of the questions, *Martinez v. Rodriguez*, 394 F.2d 156, 159 n. 6 (5th Cir.1968), we seek its assistance and guidance.

QUESTIONS CERTIFIED.