470 So.2d 505 (1985)
Michael Allen ATKINS
v.
David FRAZELL, et al.
No. 84 CA 0457.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*506 Rhett R. Ryland, Baton Rouge, for plaintiff-appellant Michael Allen Atkins.
Bonnie C. Wilson, Baton Rouge, for defendant-appellee.
Northeastern Fire Ins. Co. of Pennsylvania, King of Prussia, Pa., for defendant-appellee in pro. per.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
This bench trial of a personal injuries suit resulted in the trial judge's granting defendants' motion for involuntary dismissal under C.C.P. art. 1672. Plaintiff appeals. We reverse and remand.

FACTS
Plaintiff and two companions went to Yesterday's Lounge on February 15, 1982, arriving about 10:00 or 10:30 p.m. After consuming their second round of beer, they ordered a third round, but plaintiff did not have the opportunity to drink his third beer. Within minutes after plaintiff and his companions arrived at Yesterday's, defendant David Frazell, also known as "Tatoo David", confronted plaintiff about an indebtedness allegedly owed to Frazell's friend who operated a motorcycle repair shop. Plaintiff did not agree to pay the money to Frazell, stating instead he would talk about the matter to Sid, the repair shop owner; Frazell left the trio, muttering obscenities, and placed a call from a pay telephone about forty feet from where the trio sat at the bar; after hanging up the telephone Frazell went back and told plaintiff that he had spoken with Sid and again demanded that plaintiff pay to Frazell the $40 allegedly owed to Sid; plaintiff again told Frazell that he would discuss the matter with Sid. At the second declination to pay Frazell the money, he stated in louder than normal conversation, using unprintable obscenities, what portion of plaintiff's anatomy he intended to beat up. After he uttered his intentions to do great bodily harm, Frazell went immediately to the pool room portion of Yesterday's and obtained a pool cue, which he snapped over his left leg, and tossed the smaller end of the cue to the floor; he then rapidly approached plaintiff from the back side and without warning struck plaintiff on the back of the head, knocking him instantly to the floor. After initially felling his victim, Frazell used the large end of the cue to repeatedly strike plaintiff on the face, head, legs and generally all over his body. In spite of the brutal beating plaintiff regained sufficient consciousness to ward off Frazell's attempt to stab him in the torso with the broken cue; the stick penetrated the palm of his right hand and went all the way to the juncture of the hand and wrist.
The manager and barmaid were the only employees present when the scenario described above took place. Both were within hearing distance when Frazell demanded the money plaintiff allegedly owed Sid and when Frazell made his threat to do what he did. Approximately eight or ten people were in the lounge, seated at the bar and at tables, when the incident occurred; no music was being played during the argument and the beating; the barmaid warned the manager of an impending fight before Frazell *507 left plaintiff after the second "discussion" and before Frazell secured and broke the pool cue; the manager disagreed with her and declined her request to call the police. After plaintiff was knocked to the floor, the barmaid dialed the police department number and had a law enforcement officer on the line when the manager took the phone from her hand and hung it up, telling her "let it go." The barmaid informed the manager that she had the police on the line awaiting needed information.
When the pool cue was broken and when plaintiff was initially felled by a sharp blow with it, the manager was behind the bar and adjacent to the cash register; plaintiff was sitting opposite the cash register; on a shelf under the cash register was Frazell's.357 magnum revolver which the manager had required him to surrender to the barmaid immediately upon entering the lounge. During the vicious beating the manager was both behind the bar and sitting in a chair within a few feet of the massacre, intently watching from his "ring side" seat. Frazell not only battered plaintiff with the broken pool cue, he beat him with closed fists and kicked him in the back, sides and abdomen with steel-toed combat-type boots commonly worn by "bikers."
The witnesses' accounts estimate the length of the mayhem to have been from 2½ to 10 minutes. However, since this altercation was not a WBA sanctioned prize fight, there was no official timekeeper to state the precise length of the beating. A customer pulled Frazell away from plaintiff.
The sole stockholder of defendant J & Y Corporation, which owned Yesterday's Lounge, knew of previous fights which occurred with some regularity at the lounge during the approximately fifteen years he had operated the lounge.
Sam Cefalu, sole stockholder of J & Y Corporation, the barmaid, plaintiff, and his drinking companions testified at trial. The lounge manager, Dorman D. Lewis, listed as a "may call" witness on behalf of defendants, did not testify because the District Court granted defendants' Motion for Involuntary Dismissal. The record does not reflect whether Lewis was present when the trial began or at any other time before plaintiff closed his case.
Mr. Cefalu testified that the managers of his several lounges had all been given standing orders to settle any trouble in the lounges and if one punch is thrown by anyone they "automatically ... call the law and get a write-up on it." Cefalu testified that when he asked Lewis why Lewis did not stop the "fight" and call the police the response was that "he just had too many people against him in there that night." The use of bouncers was a long-standing practice at his several lounges on the weekends only. The incident giving rise to this suit occurred on a Monday night. The barmaid witness, who had been employed about five months at Yesterday's at the time of the beating, contradicted Cefalu's testimony regarding the use of bouncers but, based on overheard conversations between Cefalu and his managers, corroborated his stated position regarding calling the police when a fight erupts.
The several witnesses, excluding Cefalu, estimated the number of customers in the lounge to have been 6 to 10, including plaintiff and the customer who pulled Frazell off his victim to end the brawl.

TRIAL COURT
The Trial Judge granted defendants J & Y Corporation and its insurer's motion for involuntary dismissal, stating in oral reasons in pertinent part as follows:
The evidence clearly indicates that the location where this incident took place is not one which will be the scene of a number of well publicized ceremonies involving dignitaries.... [T]here have been a number of fights there.... One of [plaintiff's] friends testified that [the friend] ... had been involved in fifty of the fights over a course of time.... [Plaintiff and his drinking companions] voluntarily went into the establishment on that evening.... [C]learly the gun was in possession of the bartender and *508 was given to [Frazell] after [the fight].... [Plaintiff] did not take [Frazell's threat to do great bodily harm] seriously, apparently, because he remained there and drank a couple of beers.... Mr. Frazell obtained a pool cue, ... broke it and immediately attacked Mr. Atkins....
... The duty to call the police if time allows, was recognized in Rodney v. Mansur [219 So.2d 305]. In this case I think the evidence is very clear that if the police had been called at the time that Mr. Frazell broke the pool cue, the very minute that he broke the pool cue if the police had been on the telephone, they would not have had time to arrive there prior to the incident which occurred and prior to the injuries which occurred.
... Mr. Frazell quite clearly was responsible for the injuries and he is not a party at this point in this trial. He has been sued.... But at any rate, there has been no judgment sought against him and he is not a party to this proceeding. But I do not feel that under the cases which are cited by both sides ... that those principles apply to the facts which have been presented in this case. I don't think that the liability which exists in principle can be extended on these facts to the defendants in this case other than Mr. Frazell, and that is as to the insurance company, or as to the corporation and to the corporation's insurer. (Emphasis supplied.)

ASSIGNMENTS OF ERROR
Plaintiff assigns as error by the Trial Judge (1) his interpretation of the duty of an innkeeper to protect patrons from harm and (2) his granting the defendants' motion for involuntary dismissal.

ISSUES
The issues presented for us to resolve are:
1. Did the Trial Court correctly apply the principles governing the duty a lounge operator owes his customers?
2. Did the Trial Court err in granting defendants' motion for involuntary dismissal?

LOUNGE OPERATOR'S DUTY
Plaintiff correctly contends the "[M]anager of Yesterday's Lounge did nothing to protect or assist the patron Mike Atkins either before, during or after the vicious beating that was administered. In fact, the actions of the manager in preventing the barmaid from calling the police actually aligned the management with the vicious actions of David Frazell. This creates [C.C. art.] 2324 liability for assisting or encouraging a wrongful act."
Plaintiff cites Banks v. Hyatt Corporation, 722 F.2d 214 (5th Cir.1984), rehearing denied En Banc, 731 F.2d 888 (5th Cir.1984) and Landry v. St. Charles Inn, Inc., 446 So.2d 1246 (La.App. 4th Cir.1984) for the proposition that a business owes a duty to protect its invitees from criminal assaults by providing security, not only within the four walls of the structure housing the business, but also to adjacent property used by its customers for ingress and egress and for parking their motor vehicles in space provided for the convenience of customers.
In Landry, supra, the registered guest of defendant hotel was the victim of simple robbery while walking through the parking lot provided for the convenience of the hotel guests. Before leaving the hotel lobby she asked the desk attendant whether it would be safe to walk to the hospital, a short distance from the hotel, at the early hour of 7:00 a.m. in late November. Assured by the attendant that she would be safe, she started across the parking lot and was thrown to the ground by an attacker who forcibly took her purse containing valuable jewelry. Police records introduced into evidence at the jury trial showed that "no less than seven robberies or assaults... occurred in the immediate area during the year preceding this incident." 446 So.2d at 1249.
*509 Affirming the jury's finding of liability to the hotel guest, the Court of Appeal reasoned in pertinent part as follows:
... The innkeeper is ... required to exercise a high degree of care in order to protect his guests against the tortious acts of third persons. Kraaz v. LaQuinta Motor Inns, Inc., 410 So.2d 1048 (La. 1982)....
... The defendant, St. Charles Inn, conceded that as of the time of the attack upon the plaintiff there were no security guards on the premises, no fences to insulate hotel guests from the general public, no cameras to allow hotel employees to moniter activity in the lot; indeed, there were no security precautions of any kind whatsoever.

. . . . .
Given the repeated instances of assault that had taken place within the previous year in or around the parking lot, the jury was warranted in finding that St. Charles Inn's failure to provide any security whatsoever constituted a clear breach of the innkeeper's special duty to his guests, and that this breach substantially contributed to the attack upon Mrs. Landry.

. . . . .
It is a well recognized principle of tort law that there is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another unless a special relation exists between the actor and the other which gives the other a right to protection. Restatement (Second) of Torts, § 315. Innkeepers and guests stand in a special relation to each other (hence St. Charles Inn's liability in this case), .... 446 So.2d 1249-1250. (Emphasis supplied.)
In Banks v. Hyatt Corporation, 708 F.2d 159 (5th Cir.1983), a Louisiana case, the United States Court of Appeals for the Fifth Circuit stated in its Per Curiam opinion certifying questions to the Louisiana Supreme Court, in pertinent part, as follows:
This appeal presents important issues of Louisiana law that are more appropriately resolved by the Louisiana Supreme Court.... 708 F.2d at 159.
. . . . .
This case is appropriate for certification to the Louisiana Supreme Court. There is no controlling precedent in the decisions of the Louisiana Supreme Court which would flatly govern all aspects of this case.... [W]e certify the following questions ...:
1. Does an innkeeper have a duty to protect its guests from assaults or injury by third persons, either by warning or by employing other security measures, when it knows, or in the exercise of the standard of care [whether high degree or reasonable degree], should know, that it is possible that injury may occur within the immediate environs of the hotel?
. . . . .
2. Is a mall or building owner in whose building an inn is located under a duty of care to protect its invitees, including those persons on its property and those about to enter its building, either by warning or by taking alternative security measures, from assaults or injury by third persons when it has knowledge or should have knowledge, in the exercise of ... care [whether high degree or reasonable degree], that it is possible that an injury or an assault might occur within the close surroundings of the mall or building?
A. If so, what is the duty of care owed: ... high degree ... or ... reasonable degree ...?
B. ...
C. How immediate or foreseeable must the threat of harm be in order for the duty of care to come into existence? 708 F.2d at 162.
The Louisiana Supreme Court denied the certification request, stating: "... Certification is respectfully denied, the Court being of the opinion that once the relevant facts are determined, the case can be decided *510 on existing, established principles of Louisiana Law." 436 So.2d 1171 (La.1983).
Thereafter the U.S. Court of Appeals decided the case on the merits. 722 F.2d 214 (5th Cir.1984). Two registered guests of the Hyatt Hotel in New Orleans were "approximately at the door of the hotel" when they were confronted by two men, one brandishing a gun; one guest "managed to enter the building, but Dr. Banks was ... shot and fell dead on the sidewalk, his head thirty feet from the street curb of Loyola Avenue and his feet only four feet from the glass doors at the entrance way to the Hyatt Hotel and the Poydras Plaza Mall." 722 F.2d at 215. The jury found Hyatt and the operator of the Mall liable for Dr. Banks' death. The Trial Judge denied Hyatt's motions for judgment n.o.v. and for new trial but granted the mall operator's motion for judgment n.o.v. Hyatt appealed.
In affirming the jury verdict and the District Court's rulings, the Court, per Wisdom, C.J., reasoned in pertinent part as follows:
... In the three month period preceding the Banks killing, there were eleven armed robberies and five simple robberies within the immediate surroundings of the hotel. Dr. Banks was the second person to be shot at the Loyola Avenue entrance, and the fifth victim of armed robbery at the entrance, since the date of the hotel's opening in 1976.
At trial, the Hyatt Director of Security, Joseph Murry, reviewed twenty-one Hyatt Security Department Incident Reports describing incidents at the Loyola Avenue entrance or in the near vicinity of that entrance. The incidents occurred between December 17, 1976, and April 6, 1979, only six days before the death of Dr. Banks. Twelve of those incidents involved weapons. Murry also reviewed Hyatt Security logs detailing approximately fifty additional incidents occurring between September 1976 and April 1979. Of these incidents, at least fourteen involved weapons.
Murry's own correspondence ... showed that the prime hours of crime incidence were between 6:00 p.m. and 2:00 a.m. and, specifically, that increased patrols were required on the Loyola Avenue corridor between Girod and Poydras Street.
A representative of ... a national management corporation that contracted with Refco [the mall operator] to supply management services for the mall, testified that he had recommended to Refco that a security guard be stationed at the Loyola Avenue entrance to the mall between the hours of 8:00 p.m. and 4:00 a.m.
. . . . .
Early in 1979, before Dr. Banks' death, Hyatt, Refco, and three other property owners in the square ... hired off-duty, uniformed, armed police officers to patrol the perimeter of the property including the parking area on each side of the mall.... The `perimeter patrol' started three weeks before the Banks incident. It was a large area for one man to patrol. At the time of the killing, the officer providing perimeter protection was in the motor lobby, at the opposite end of the complex. [722 F.2d at 218-219.]
. . . . .
III. DUTY OF CARE
. . . . .
Although the Restatement of Torts maintains that landowners and innkeepers owe the same duty of care towards business invitees and guests, respectively, Louisiana law recognizes a distinction in this regard. The owner or operator of a business owes a duty to invitees to exercise reasonable care to protect them from injury. This duty does not extend, however, to unforeseeable or unanticipated criminal acts by an independent third person. "Only when the owner or management of a business has knowledge, or can be imputed with knowledge, of a third person's intended criminal conduct which is about to occur, and which is within the power of *511 the owner or management to protect against, does such a duty towards a guest arise." Davenport v. Nixon, La. App. 1st Cir.1983, 434 So.2d 1203, 1205...; accord Pennington v. Church's Fried Chicken, Inc., La.App. 1st Cir. 1980, 393 So.2d 360, 362; ... Because there is no evidence ... that Refco employees knew, or can be imputed with the knowledge, that Dr. Banks and his companion were about to be assaulted at the Poydras Street entrance to the mall, Refco cannot be held to have violated its duty of care to Dr. Banks.
The Louisiana Supreme Court has recently held that innkeepers owe their guests a duty of care higher than ordinary or reasonable care.... Kraaz v. LaQuinta Motor Inns, Inc., La.1982, 410 So.2d 1048, 1053 [722 F.2d at 220].
. . . . .
... We are convinced that, at least under Louisiana law, the duty of a business to protect invitees can extend to adjacent property, particularly entrances to the business premises, if the business is aware of a dangerous condition on the adjacent property and fails to warn its invitees or to take some other reasonable preventive action. As an innkeeper, Hyatt is potentially liable not only for dangerous physical conditions, but also for foreseeable criminal assaults by third persons. Hyatt clearly was aware of the risk of criminal assault that its guests faced in the immediate area surrounding the hotel....
. . . . .
Tort law has become increasingly concerned with placing liability upon the party that is best able to determine the cost-justified level of accident prevention. (citations omitted.) Holding a negligent innkeeper liable when there is a third-party assault on the premises is sensible, not because of some abstract conceptual notion about the risk arising within "the course of the relation", but because the innkeeper is able to identify and carry out cost-justified ("reasonable") preventive measures on the premises.... As between innkeeper and guest, the innkeeper is the only one in the position to take the reasonably necessary acts to guard against the predictable risk of assaults. He is not an insurer, but he is obligated to take reasonable steps to minimize the risk of his guests within his sphere of control. [722 F.2d at 225-227.] (Emphasis and brackets supplied.)
While it may appear at first blush that the principles stated in Landry and Banks, supra, are inapplicable to the present case, they are pertinent to the matter before us. The fact that both Landry and Banks, supra, were suits by registered guests of hotels and the suit before us on appeal is by a customer of a tavern or saloon does not make them any less applicable in the present case. Miller v. Derusa, 77 So.2d 748 (La.App. 1st Cir.1955) applied the innkeeper's duty to a bar or tavern customer who sustained severe injuries when another customer struck him with a club as he sat at the bar. Lottinger, J., for the Court, in affirming the judgment in favor of plaintiff, reasoned in pertinent part as follows:
The record shows that Derusa operated a grocery store and bar-room both open to the public, and ... on the night of the assault the plaintiff was legally on the premises for the purpose of purchasing goods sold by defendant Derusa and enjoying the entertainment provided by him, thus making him a guest of the latter. See Murray v. Hagens, La.App., 143 So 505, 506, wherein it was held that:
"A guest is a person entertained for pay at an inn, tavern, or hotel upon the general undertaking of the keeper of the house."
Having concluded that the plaintiff was a guest of Derusa, it is clear that he was entitled to the latter's protection from the actions of his fellow guests. The rule is stated in 43 C.J.S., Innkeepers, § 22, p. 1175, as follows:
"The innkeeper must protect his guests, while in the inn, against injury at the hands of third persons, whether they are guests or strangers, where it *512 is within his power or that of his servants to do so; and his obligation is not met by merely warning the guest."
. . . . .
Having concluded that the plaintiff was guest of the defendant ..., the remaining question is ... whether Derusa did or did not violate the duty owed by him toward plaintiff....
... Derusa knew of previous trouble between plaintiff and Simien [tortfeasor], knew that Simien planned to attack plaintiff that night, and was talking to plaintiff just before the occurrence of the battery.... 77 So.2d at 749. (Brackets supplied.)
The jurisprudence of at least twenty-three states, including Louisiana, expressly support the principle that the proprietor of a saloon or similar place has the duty to exercise reasonable care to protect patrons from injury by other patrons. ANNO: "Liability of innkeeper, restauranteur, or tavern keeper for injury occurring on or about premises to guest or patron by person other than proprietor or his servant, " 70 A.L.R.2d 628, §§ 17 and 18, pp. 655-665 and Later Case Service, A.L.R.2d, pp. 457-461.
In Kraaz v. LaQuinta Motor Inns, Inc., 410 So.2d 1048 (La.1982), Watson, J., for the Court, stated "The primary issue is the delictual liability of an innkeeper for an employee's negligence which is a substantial factor in the armed robbery of a guest." 410 So.2d at 1049. Affirming the lower courts' holdings in favor of the robbed and injured guests, Justice Watson, speaking for the majority, reasoned in pertinent part as follows:
An innkeeper does not insure his guests against the risk of injury or property loss resulting from violent crime. LSA-C.C. art. 2970, ... The innkeeper's position vis-a-vis his guests is similar to that of a common carrier toward its passengers. (citation omitted). Thus, a guest is entitled to a high degree of care and protection. (citations omitted). The innkeeper has a duty to take reasonable precautions against criminals. Safeguarding the room keys is a minimum requirement. The duty to avoid handing a pass key to any stranger is even stronger. Breach of this duty was a direct cause of plaintiffs' physical, emotional and financial damages. La Quinta's employee ... was at fault in giving the two armed robbers a pass key. The employer is liable for the resulting damages. LSA-C.C. arts. 2315; 2320. 410 So.2d at 1053. (Emphasis supplied.)
We affirmed a judgment in favor of a motel guest who was robbed by another guest who slashed plaintiff repeatedly with a knife both before and after taking the victim's money. In Davenport v. Nixon, 434 So.2d 1203 (La.App. 1st Cir.1983), cited approvingly by the U.S. Fifth Circuit Court of Appeals in Banks, supra, plaintiff, while checking in at a motel via the "late night check-in window," asked the proprietor for permission to come inside the office to pay for his accommodations because he was carrying a large sum of money and had just been approached by a man who stated he was a guest of the motel and had declined the other's request to join the individual in his room for a drink; plaintiff's request was denied and after getting into his truck, he was robbed and knifed by the guest, who was arrested the next day; the proprietor's wife, who handled plaintiff's checking in, "had been suspicious of Fraser [the guest/robber] even before plaintiff expressed his concern immediately before the attack." 434 So.2d at 1205. In upholding the District Court's finding that the motel proprietor was liable for the motel guest's criminal acts, we explained the holding of Kraaz, supra, in part as follows:
... The Supreme Court seemed to equate the duty of an innkeeper to that required of common carriers to insure the safety of their passengers. The common carrier must prove a lack of negligence anytime a passenger is hurt. (citation omitted). We think the comparison made in Kraaz between the respective duties of an innkeeper and a common carrier was only to emphasize the *513 guests of both are entitled to a high degree of care....
The record ... [establishes that the proprietor's wife] was negligent in that she did nothing when put on notice concerning an impending criminal incident which was within her power to help prevent. Though appellants contend the attack was not foreseeable since Fraser had been a guest at the hotel for about a week and a half and had caused no trouble, and since there had never been any previous incident at the hotel involving an attack on a guest, the record shows that [the proprietor's wife] had been suspicious of Fraser even before plaintiff expressed his concern immediately before the attack....
... [T]he innkeeper was aware of suspicious activity and was asked for protection against a specific threat.... Even if [she] ... chose to refuse plaintiff's request to come inside, she could have taken other precautions for plaintiff's safety.... If she had [watched to see if plaintiff had reached his room safely], the attack might well have been prevented or at least cut short. The Coke machine in front of the office contained a loud siren which [she] could have activated from the office and thus caused the assailant to desist. A second siren was also available for alarm purposes.
... We ... conclude ... the breach of [the innkeeper's] duty of care to plaintiff was a substantial factor in causing plaintiff's injuries. 434 So.2d at 1205-1206. (Emphasis and brackets supplied.)
Plaintiff, his drinking companions, and the barmaid all testified that the verbal exchange between Frazell and plaintiff took place within hearing range of the manager and barmaid; that included Frazell's threat to "stomp out" plaintiff's eyes when he refused a second time to let Frazell have the money plaintiff allegedly owed Sid. The testimony places the barmaid and manager in very close proximity to each other and to plaintiff, a distance of approximately four feet at the time the threat was made; the barmaid stated her belief that the manager overheard the conversation between Frazell and plaintiff and Frazell's threat. The barmaid was standing right next to the manager when she called the police department, even after he had told her "let it alone" when she first asked him to call the police, because she thought a fight was brewing; they were so close that he reached over and took the telephone receiver from her hand and hung it up, although a law enforcement communications person was on the line and the brutal beating was already in progress. The barmaid's testimony was uncontradicted, the manager, Dorman D. Lewis, never having testified because the defense motion for an involuntary dismissal was granted at the conclusion of plaintiff's case. Several days before he cowardly attacked plaintiff, the barmaid testified that Frazell was in a fist fight at Yesterday's which she and the lounge manager witnessed. She also testified that Frazell was a frequent customer of Yesterday's, a fact known to the manager. Testimony establishes that Yesterday's clientele consists of a collection of rough and tough individuals.
The District Court concluded that the facts did not establish "the liability which exists in principle ... to the defendants in this case other than Mr. Frazell." He also concluded that even if "the police had been on the telephone [at the very moment Frazell broke the pool cue], they would not have had time to arrive there prior to the incident which occurred and prior to the injuries which occurred."
Appellate courts should not disturb a finding of fact unless it is manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), and cases cited therein; Daigre v. Department of Transportation and Development, 461 So.2d 609 (La.App. 1st Cir.1984). In the present case the District Court's holding that the facts presented by plaintiff did not establish a breach of the duty owed by a proprietor of a saloon to his customers is clearly wrong. Initially we note that the trial judge's reasoning did not address the owner's duty with reference to Frazell's *514 known propensity for violence. Further, plaintiff's witnesses' unrebutted testimony established that Yesterday's manager, Dorman D. Lewis, was aware, or should have been aware, that trouble was brewing and a fight was imminent, based on: (1) his opportunity to hear the verbal exchange between Frazell and plaintiff who were a few feet distance from him; (2) his opportunity to hear Frazell's threat to "stomp out" plaintiff's eyes; (3) his opportunity to see Frazell break the pool cue and to hear the cracking sound of the cue as it broke; (4) his opportunity to observe Frazell as he rushed at plaintiff with the stick in his hand; (5) his opportunity to shout a warning to plaintiff had he chosen to; (6) and his watching, as an interested spectator, the brutal beating from his "ring-side" seat once the mayhem started rather than following his employer's standing orders, related above. The testimony also established that the saloon was a popular hang-out for motorcycle riders, or "bikers" as referred to by witnesses, not known for their genteel qualities or chiffon jackets, perhaps because the latter wrinkle too easily. We observe, additionally, that the barmaid testified that the manager was at the cash register, less than an arm's length from Frazell's .357 magnum revolver.

INVOLUNTARY DISMISSAL
As stated in Gleason v. City of Shreveport, 393 So.2d 827 (La.App. 2nd Cir.1981):
Unlike a motion for a directed verdict in a jury trial, [C.C.P. art. 1672(b) ] requires a judge to evaluate all of the evidence and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent of the motion. (citation omitted) "Proof by a preponderance of the evidence" simply means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. 393 So.2d at 829.
We conclude, based on the unrebutted eye-witness testimony, that plaintiff proved the duty owed to patrons of a saloon was violated and the violation of that duty was a substantial cause-in-fact of the extensive injuries he sustained. The Trial Judge was clearly wrong in holding to the contrary. On remand, defendants will have the opportunity to rebut the plaintiff's evidence that Frazell's vicious acts, (for which he was given a five year suspended sentence in the custody of the Louisiana Department of Corrections and a one year sentence in the East Baton Rouge Parish Prison, subject to time served, for the offense of aggravated battery, to which he pleaded guilty), would probably not have occurred if the employees of Yesterday's Lounge had not violated the saloon proprietor's duty to the customer, who is entitled to a high degree of care and protection, to prevent violent acts by other customers. While defendants may have great difficulty in rebutting plaintiff's evidence, they nevertheless are entitled to make the effort.

SCOPE OF REMAND
Plaintiff's petition sought as an item of damages "loss of wages" and his exhibits portion of the Pre-Trial Order listed "wage records." Some testimony was given by plaintiff regarding loss of wages. However, since in our opinion, the record is inadequate, due to a scarcity of competent evidence on this important point, we conclude that upon the remand of this case, plaintiff will be permitted to present additional evidence, lay and expert opinion testimony and documents, to establish loss of wages/diminished earning capacity entitlement, if any. We believe that the interests of justice will best be served by permitting such on remand. In order to properly present the evidence before the Trial Court on remand, it may be necessary, in order to comply with procedural requirements and District Court Rules, to appropriately amend pleadings, including the petition and Pre-Trial Order, and, to the extent necessary, plaintiff will be permitted to amend and make additional discovery if no undue *515 delay of the trial on remand will likely result.
C.C.P. art. 2164 is the "... salutary codal authority [which] grants to this Court the prerogative of remanding a cause on its own motion when the interest of justice requires it." Missouri Pacific Railroad Co. v. Louisiana Public Service Commission, 241 La. 242, 128 So.2d 644, 646 (1961). Foret v. Aetna Life and Casualty Co., 337 So.2d 676, 683 (La.App. 3rd Cir.1976) makes applicable C.C.P. art. 2164 to cases remanded for the purpose of taking additional evidence.
Accordingly, the judgment of the District Court is reversed and the matter remanded for further proceedings, consistent with the views herein expressed. Assessment of costs shall await final disposition of this suit.
REVERSED AND REMANDED.