WATKINS, Judge.
This is a suit for damages arising from the death of plaintiffs’ husband and father, Percy J. Tillotson, Sr. From a trial court judgment granting directed verdicts in favor of defendants, State of Louisiana, Office of State Police and East Baton Rouge Sheriffs Office and its insured, American Druggists’ Insurance Company, plaintiffs appeal. For the following reasons, we agree and affirm.
Percy Tillotson, Sr. died on the morning of July 6, 1982, between seven and nine a.m. from stab wounds inflicted by defendant, Charles Jackson, Jr.[1] Tillotson and Jackson had been playing cards the previous night and were returning home in Til-lotson’s car when Tillotson, who was driving, veered off the roadway into the ditch. According to Jackson, it was at this time that a struggle ensued resulting in the fatal stabbing of Tillotson. After several unsuccessful attempts to drive the vehicle from the ditch, Jackson fled the scene at which time he testified that Tillotson was still alive.
David Strange testified that on the morning of the incident at approximately 7:20 a.m. he was driving to his place of employment, W & W Clarklift, Inc., located on Airline Highway. He stated that his usual route to work was to go down Umberhagan Street which is parallel to Airline Highway and then turn right onto Thad Cain Lane, a narrow street which runs alongside W & W Clarklift, Inc. and intersects with Airline Highway. After making the turn onto Um-berhagan, he noticed a vehicle about one to two hundred yards ahead beginning to turn onto Thad Cain Lane. He saw the car veer into the ditch. He then saw the passenger, Jackson, pull the driver, Tillotson, into the middle of the seat and climb into the driver’s seat.
He pulled behind this car, stopped and went to offer assistance. As he neared the vehicle, he noticed the driver was having difficulty in his attempts to remove the car from the ditch. Peering into the car, he also noticed an older man leaning across the seat and assumed both men were intoxicated. Since Jackson had affirmatively responded to his offer of help, Strange returned to his vehicle and proceeded to his workplace to obtain assistance. Because the Tillotson vehicle was blocking the intersection, Strange reversed his course and arrived at W & W Clarklift, Inc. via Airline Highway which in his estimation took approximately five to ten additional minutes.
Upon arriving at the shop, Strange noticed that no one remained in the car. After discussing the situation with his fellow employees, a decision was made to call the Sheriff’s Office. Strange resumed his normal activities and heard nothing further on the matter until that afternoon around two when a co-worker went to the car and discovered the body of Percy Tillotson.
Corporal Chuck Decker of the East Baton Rouge Parish Sheriff’s Office stated that his office received an anonymous phone call at approximately 7:30 a.m. advising that there was a car in a ditch off Airline Highway near Umberhagan Street approximately two and a half miles south of State Police Troop A headquarters. The caller further stated that the driver may have been intoxicated because he was try *920 ing to drive the car unsuccessfully out of the ditch.
Because it was the policy of the Sheriffs Office not to investigate wrecks on Airline Highway, Decker testified that he immediately contacted the State Police through a direct phone connection with that office, and informed their radio operator of the situation and requested a unit be sent to investigate. He further stated that this call was not entered into the daily radio log since their office did not dispatch anyone to investigate.
Bonnie Granata, communications operator with State Police Troop A, testified that she received the call from the Sheriffs Office informing her of a wreck at U.S. 61 (Airline Highway) and W & W Clarklift. She dispatched a unit to the scene and he reported back that there was no wrecked vehicle as she had reported but only an abandoned car. An investigation showed the car to be broken down and its owner requested it be allowed to remain.
She further testified that she received a second call shortly thereafter from the Sheriffs Office and she dispatched an officer to investigate at the same location. Again, the search proved unsuccessful.
Trooper Richard Honoré testified that it was he who received the call to investigate a vehicle which reportedly had gone into the ditch off Airline Highway. He stated that the only vehicle he located was the abandoned vehicle previously mentioned. Trooper Honoré also received the second call and again, after searching the area more thoroughly than the first time, was unable to locate any vehicle which had gone into a ditch as he had been told.
An autopsy was performed the next morning by Dr. Hypolite T. Landry, Jr., East Baton Rouge Parish Coroner. He testified that there were six stab wounds to the body, with the wound to the heart being fatal. This wound went into the upper two chambers of the heart causing massive hemorrhaging into the mediasti-num and right thoracic cavity resulting in hypovolemic shock and the death of Percy Tillotson. It was his opinion that this two-inch wound to the chest would have allowed the decedent to remain alive for no longer than forty-five minutes.
Although he listed 7:00 a.m. as the time of death on the autopsy, he testified that the decedent could have been alive, but unconscious, as late as 9:00 a.m. On cross-examination Dr. Landry testified that the chances of survival with a wound of this magnitude to such a vital area of the heart were practically non-existent regardless of when this decedent would have been found and treated.
Dr. Albert McQuown testified for the plaintiffs as an expert in forensic pathology. He agreed with Dr. Landry’s testimony that based upon the information contained in the autopsy report, Mr. Tillotson may have had two hours of living after the stabbing. However, he stated on cross-examination that if the hole to the heart was as large as Dr. Landry testified, then the chances of surviving such an injury were slight.
After the completion of plaintiff’s presentation of evidence, defendant moved for a directed verdict.
LSA-C.C.P. art. 1672(B)[2] provides:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In non-jury cases, the appropriate standard for the trial court’s determination of a motion for directed verdict is whether *921 the plaintiff has presented sufficient evidence on his case-in-chief to establish a claim by a preponderance of the evidence. In making this determination, the trial court is not required to review the evidence in the light most favorable to the plaintiff but may instead render judgment based upon a preponderance of the evidence. In such cases, the trial court should not be reversed in the absence of manifest error. Hanover Insurance Co. v. Forte & Tablada, Inc., 457 So.2d 755, 757 (La.App. 1st Cir.1984); Succession of Jacque, 424 So.2d 1152 (La.App. 1st Cir.1982), writ denied, 429 So.2d 145 (La.1983).
In Everett v. Louisiana Department of Transportation and Development, 424 So.2d 336, 341 (La.App. 1st Cir.1982) this court stated:
It is well settled in Louisiana that for a plaintiff to recover in negligence, he must prove: (1) that the act complained of was a cause-in-fact of the accident, (2) that the defendant had a duty, either statutory or non-statutory, to protect this plaintiff against the cause of harm complained of, (3) that the defendant breached this duty to protect this plaintiff, and (4) that the plaintiff was harmed by this breach of duty owed. (Citations omitted).
Thus, the initial inquiry in determining whether a defendant was negligent is whether a causal relationship existed between the harm suffered by the plaintiff and the alleged negligent conduct of the defendant. Hill v. Lundin & Associated, Inc., 260 La. 542, 256 So.2d 620, 622 (La.1972). The burden of proving both the existence of the damages and the causal connection between them and the accident rests with the plaintiff. Such proof must be shown to a legal certainty and by a reasonable preponderance of the evidence. A mere possibility is insufficient. Fogg v. Lott, 444 So.2d 177, 180 (La.App. 1st Cir.1983); Stevens v. Gulf American Fire & Casualty Company, 317 So.2d 199 (La.App. 1st Cir.1975), writ denied, 321 So.2d 363 (La.1975).
In granting the defendants’ motions for directed verdicts, the trial court found the plaintiffs failed to prove the conduct of the defendants was a cause-in-fact of the accident. After a thorough review of the record, we find no error in the lower court’s ruling.
The evidence shows that both the Sheriff’s Office and State Police handled the situation in a prudent manner based upon the information with which they were furnished. The record is devoid of any offering of proof by the plaintiffs that had the victim, with the injuries sustained, been located sooner by either defendant, he would have survived. On the contrary, Dr. Landry in emphasizing the gravity of Til-lotson’s injury hypothesized that had the wounds been sustained outside a hospital, the chances of survival were at best remote. Since the plaintiffs have not proven that the failure of the defendants to timely find the victim’s automobile was a cause-in-fact of the death of Percy Tillotson, further inquiry as to the negligence of the defendants was not required and the directed verdicts were properly granted.
Costs of this appeal are to be borne by the appellants.
AFFIRMED.

. Charles Jackson, Jr. was convicted of second degree murder of Percy Tillotson, Sr. and is now serving the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence.

. By Acts 1983 No. 534, La.C.C.P. art. 1810B, previously found in the section dealing with jury trials, was transferred to La.C.C.P. art. 1672(B) in the section dealing with dismissal.