517 So.2d 185 (1987)
Jerome J. SILVIO, et al.
v.
PHAROAH'S PALACE, et al.
No. 86 CA 1246.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
*186 Jack N. Rogers, Baton Rouge, for plaintiffs-appellants Jerome J. Silvio, Jr., Michael A. Humphries and John E. Fedric.
David Guerry, Baton Rouge, for third party defendant-appellee Independent Guard and Sec., Inc.
Albert Dale Clary, Baton Rouge, for defendant-appellee and third party plaintiff-appellee Pharoah's Palace, Inc. and Ray Rogers.
Before COVINGTON, C.J., and SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
Jerome J. Silvio, Jr., Michael A. Humphries, and John E. Fedric (plaintiffs) were injured during an altercation with two men from Tennessee, Danial Eggleston and Johnny Barnett, at the Texas Dance Hall (Texas), a Baton Rouge nightclub, on October 20, 1982. They brought suit against Pharoah's Palace, Inc. (Pharoah's), the corporation which owns and operates Texas; Ray Rogers, a shareholder in Pharoah's; two unidentified employees of Pharoah's referred to as "John Smith" and "Joe Doaks," and Eggleston and Barnett.
Plaintiffs proceeded to trial against only Rogers and Pharoah's because they were unable to ascertain the identities of Doaks and Smith and were unable to obtain service of process on Eggleston and Barnett. The trial court granted Rogers' motion for involuntary dismissal at the close of plaintiffs' case and granted Pharoah's motion for involuntary dismissal at the close of all the evidence.[1] Plaintiffs appeal the dismissal of Pharoah's, contending the trial court erred in finding that Pharoah's complied with its legal duty to plaintiffs.
FACTS
Fedric and his wife Jennie went to Texas about 9:00 p.m. to hear a concert by Earl Thomas Conley, a country and western singer. They each paid a cover charge of between $8.00 and $12.00. Fedric drank nothing before going to the nightclub and had drunk only "two swallows" of his drink at Texas when he made the mistake of standing at a balcony railing overlooking the dance floor and bandstand, thereby blocking the view from a table at which sat three men and a woman from Tennessee. One of the Tennesseans expressed his displeasure *187 at Fedric's conduct by kicking him in the rear. Words were exchanged, and the Tennessean summoned a security guard, who ordered Fedric to go to the bar area. Fedric complained of this treatment to the bartender who, according to the testimony of Fedric and his wife, told them that several other people had been "run off" from the railing area earlier that night by the Tennesseans. About twenty minutes later, Fedric's friends Silvio and Humphries entered Texas. All three plaintiffs and Jennie Fedric gave the following account of the events that followed.
Without speaking to Fedric, Silvio and Humphries walked to the railing to get a look at Earl Thomas Conley. Immediately, the Tennessean who had kicked Fedric grabbed the back of Humphries' belt and jerked him backward. Humphries and the Tennessean exchanged words, and Humphries, in order to avoid a confrontation, turned and began to walk away.
The woman seated at the Tennesseans' table then made a remark which incited the Tennessee men. The man who jerked Humphries broke a beer bottle. When Humphries turned around, the man threatened to cut him. While Humphries was keeping an eye on the man with the beer bottle, another of the Tennesseans hit Humphries, breaking his jaw. Silvio then came to his friend's defense, punching the man who hit Humphries. While Silvio was thus occupied, the first Tennessean was able to slip behind Silvio and stab him in the throat with the beer bottle. In the meantime, Fedric attempted to aid his friends by tackling the third Tennessean, who was coming round the table to join the melee. Fedric's hold on the man was almost broken, however, when a woman hit him over the head with a beer bottle.
The fight lasted approximately one minute and was quickly broken up by the security guards, who escorted Humphries, Silvio, and the Tennesseans outside. Ricky Waldrop, a friend who had ridden to the nightclub with Silvio and Humphries, took Silvio to the hospital. Humphries and Fedric received medical treatment two days later. While Waldrop took Silvio to the hospital, Fedric, his wife, and Humphries went to the police station and gave statements, but the Tennesseans were never criminally prosecuted.
PHAROAH'S DUTY OF CARE
The owner or operator of a business owes a duty to its guests to exercise reasonable care to protect them from injury. Atkins v. Frazell, 470 So.2d 505 (La. App. 1st Cir.1985). A guest is a person entertained for pay at an inn, tavern, or hotel upon the general undertaking of the keeper of the house. Miller v. Derusa, 77 So.2d 748 (La.App. 1st Cir.1955). This duty of care toward a tavern's guests does not extend to

unforeseeable or unanticipated criminal acts by an independent third person. "Only when the owner or management of a business has knowledge, or can be imputed with knowledge, of a third person's intended criminal conduct which is about to occur, and which is within the power of the owner or management to protect against, does such a duty towards a guest arise." Davenport v. Nixon, La. App. 1st Cir.1983, 434 So.2d 1203, 1205...;
Atkins, 470 So.2d at 510-11 (original emphasis).
INVOLUNTARY DISMISSAL
The appropriate standard for the trial court's determination of a motion for involuntary dismissal is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish his claim by a preponderance of the evidence, without any inferences in favor of the opponent of the motion. Tillotson v. Undisclosed Insurance Co., 486 So.2d 918 (La.App. 1st Cir.), writ denied, 486 So.2d 918 (La.App. 1st Cir.), writ denied, 488 So.2d 1026 (La.1986); Atkins v. Frazell, 470 So.2d at 514. The trial court's determination will not be disturbed in the absence of manifest error.
CONCLUSION
Plaintiffs' sole assignment of error is that the trial court was manifestly erroneous in finding that Pharoah's did not *188 breach its legal duty toward plaintiffs. The only evidence presented that Pharoah's had knowledge of the propensity of the Tennesseans for violence was the uncorroborated testimony of Fedric and his wife that one of the bartenders told them there had been prior incidents involving the Tennesseans that night. Terry Jack Bates, the only bartender to testify, stated that no one had complained to him about the Tennesseans and he had no reason to believe there was going to be trouble. The testimony of Stanley Neal Braud and Jim Pickering, two of the three guards on duty inside Texas that night, was that they had no knowledge of prior incidents involving the Tennesseans. Even Fedric himself, when questioned by the trial judge, admitted that he did not anticipate trouble when Silvio and Humphries walked to the rail.
We find plaintiffs' assignment of error to be without merit. The trial judge was not clearly wrong in finding that plaintiffs failed to present enough evidence in their case-in-chief to establish by a preponderance of the evidence their claims that Pharoah's had or was imputed with knowledge of the Tennesseans' violent propensities. Thus, the judgment granting Pharoah's motion for involuntary dismissal must be affirmed at plaintiffs' costs.
AFFIRMED.
NOTES
[1] A third party demand filed by Pharoah's and Rogers against Independent Guard and Security, Inc., which provided security guards for Texas on the night of the altercation, also was dismissed.