WICKER, Judge.
Velma B. Russell appeals the custody and visitation award pertaining to Jazzmin Russell, the minor daughter of her and her former husband, Louis Russell. We affirm but remand for the implementation of a custody plan.
Mr. and Mrs. Russell separated when Jazzmin was four years old. The couple had been living with Mr. Russell’s parents since their marriage; and when Mrs. Russell left the marital domicile, she left Jazz-min with her husband. Both parents sought custody of their daughter. The judge awarded the parents joint custody and Mr. Russell primary physical custody, with Mrs. Russell to have liberal visitation *4 as agreed upon by the parties. In making Mr. Russell primary physical custodian, he considered the following factors in accordance with La.C.C. art. 131 (formerly art. 146): the presence of Jazzmin in her paternal grandparents’ home since birth and the love, affection, and emotional ties between the child and Mr. Russell’s parents; the ability of Mr. Russell and his parents to guide and continue Jazzmin’s educational and religious development; Mrs. Russell’s greater ability to provide economically for her daughter; and performance as a family unit of Mr. Russell’s family home. He concluded
So just taking a checklist of the factors and considering, under the present circumstances I would have to say that the child should remain with the father as the primary custodial parent, at least until such time as he finishes his education and gets out into the business world.
The issue, as defined by Mrs. Russell, is whether, when both parents are equally fit and able, the court erred in considering the role of the paternal grandparents in the life of the child.
La.C.C. art. 131 requires the award of joint custody, providing it is in the best interest of the child. When joint custody is awarded, “[t]he court shall, unless waived by the court for good cause shown, require the parents to submit a plan for implementation of the custody order....” That plan may, among other things, designate the child's legal domicile. Joint custody “shall mean the parents shall, to the extent feasible, share the physical custody of” the child. “The proper standard for determining custody of a minor child is the best interest of that child.” Onderdonk v. Onderdonk, 547 So.2d 1138, 1140 (La.App. 5th Cir.1989), writ denied 552 So.2d 386 (La.1989). The old “maternal preference” rule has been abrogated both legislatively and jurisprudentially. La.C.C. art. 134 (formerly art. 157); Bordelon v. Bordelon, 390 So.2d 1325 (La.1980). See also Sharp v. Sharp, 470 So.2d 371 (La.App. 5th Cir. 1985).

Mrs. Russell’s Testimony

Mrs. Russell testified that she is presently living with her cousin Carrie Lewis in Lutcher and visits her family in Baton Rouge on the weekends. Ms. Lewis has a son and three foster children living with her, but Mrs. Russell does' have her own room. Mrs. Russell had been looking for other housing and has entered into a lease contract for a two-bedroom apartment. She and her husband lived with his parents even before Jazzmin was born, and the child is close to her paternal grandparents. However, Mr. Russell and his parents interfere with her efforts to correct Jazzmin and raise her. If Jazzmin were living with her, she would keep the child in her present Head Start program. She would either take Jazzmin to school or let her ride the bus. After school lets out at 2:00 P.M., Jazzmin would stay at her cousin Carrie Lewis’ day nursery until Mrs. Russell got off work at 4:00 P.M. She admitted that Mr. Russell, Sr. contributed to Jazzmin’s support and gave her husband money. Jazzmin wants her parents to be together. Mrs. Russell would encourage the child’s relationship with her father. The major problem in the marriage was her husband’s unwillingness or inability to establish a home for his wife and child separate from that of his parents.

Mr. Russell’s Testimony

Mr. Russell lives with his parents while attending Southern University in Baton Rouge. He has one more semester of school before getting his degree in secondary education. He also works part-time at a local radio station. While conceding that Mrs. Russell is not a bad mother, he asserted that his parents’ home is the only home Jazzmin has known and that she is very comfortable there. She will have her own room. Mr. Russell also testified that Jazz-min is very close to him and that he has been the primary caregiver. His daughter adores her grandparents and would suffer if she was taken away from them. Jazz-min is doing very well in Head Start, he helps her with her schoolwork, and he had implemented an educational plan for her even before she entered Head Start. Jazz-min has not asked for or cried for her *5 mother since she left. However, Mrs. Russell sees the child every weekend and calls during the week; and he encourages this. He would have no objection to letting Jazz-min be with her mother a couple of days during the week as well. He admitted that he was not financially self-sufficient and had to rely upon his parents and wife for support. He also testified that his parents never came between Jazzmin and her mother but that they did voice their opinion about things.

Mr. Russell, Sr.’s Testimony

Mr. Louis Russell, Sr. testified that both his son and daughter-in-law were good parents; but he thought Jazzmin would prefer her father based upon his observations. His son took Jazzmin to church and sometimes to the radio station with him, and the child and her father are very close. Mr. Russell, Jr. has more time for Jazzmin. He testified that he will always be there to help his son and Jazzmin, he can support them until his son is out of school, and he has an educational fund for his granddaughter. He treats Jazzmin like one of his own children. He concluded that it would not be in the child’s best interest to be with her mother because of her “attitude towards the child and towards people in general.”

Mrs. Russell, Sr.’s Testimony

The parties stipulated that Mrs. Russell, Sr. would testify as did her husband.

Ms. Carrie Lewis’ Testimony

Ms. Carrie Lewis, who is related to both Mr. and Mrs. Russell, testified about Mrs. Russell’s present living arrangements.

Ms. Thelma Miles’ Testimony

Ms. Thelma Miles, who knows both parties, testified about the circumstances under which Mrs. Russell left home without Jazzmin.
We can tell from the evidence that both of these parents are fit and caring. Whichever parent has primary custody will apparently have to rely on others for Jazz-min’s care: Mrs. Russell will need after-school care from Ms. Lewis until she returns from work, and Mr. Russell will need help from his parents if his school schedule prevents him from being home when Jazz-min returns from school. Living with Mr. Russell will maintain Jazzmin in the same stable family situation she has known from birth. It will also provide continuity with regard to Jazzmin’s religious and educational development.
A judge has wide discretion to determine the best interest of a child, and his custody orders will not be disturbed unless there has been a manifest abuse of that discretion. Hartle v. Hartle, 469 So.2d 428 (La.App. 3rd Cir.1985). We do not believe the judge abused his much discretion, especially since he ordered the parties to work out an amicable implementation plan or submit respective plans to him for consideration. We affirm the judgment awarding joint custody to both parents, Louis Russell, Jr. and Velma Russell, with Mr. Russell designated the primary domiciliary parent.
However, La.C.C. art. 131 requires the parents to submit a plan or plans for implementation of the custody order unless the judge shows good cause for waiver. We do not find any good cause in the record for waiving this requirement and remand this matter. The judge is instructed to order Mr. and Mrs. Russell to. submit a plan or plans for implementation of the custody order within thirty days from the date of this opinion. The judge is further instructed to incorporate the details of shared custody into his custody decree.
AFFIRMED BUT REMANDED.