laCANNELLA, Judge.
Defendant, Carl I. Yellon, appeals from a district court judgment in favor of plaintiff, Lori Weiss Kiefer (formerly Yellon), regarding custody of and visitation with their minor child. For the reasons which follow, the judgment of the trial court is affirmed.
The parties were married on April 5, 1981. On January 24,1990, they finalized the adoption of the minor child, Lindsey Nicole Yel-lon. Shortly thereafter, appellee filed for divorce. A judgment, dated July 3, 1991, granted a final divorce and joint custody of the minor child. Appellee was named custodial parent and liberal visitation was granted to appellant. Custody and visitation proceeded smoothly although there was tension between the parties. Both parties eventually remarried, appellee to Blake Kiefer and appellant to Michele Cupples.
On December 9, 1992, appellee filed for sole custody of the minor child, alleging that appellant had sexually abused the child. She requested that all ^visitation be terminated pending the outcome of the ease. The order suspending visitation by appellant was signed ex parte on December 9, 1992.
On December 22, 1992, appellant filed a rule requesting sole custody of the minor child. He denied all allegations that he had sexually abused his child and alleged, to the contrary, that it was the new husband of appellee who was sexually abusing the child.
Numerous other rules were filed by both parties. During the six day hearing, appel-lee alleged and attempted to prove that appellant had sexually abused their minor child and appellant attempted to prove that the sexual abuse allegations were retaliatory or to protect the guilty party, Mr. Kiefer. At the close of testimony, the trial judge took the matter under advisement and rendered judgment on October 28, 1993. The trial court ruled that the minor child had been sexually abused by appellant, granted sole custody of the child to appellee and suspended all visitation rights of appellant. He was ordered to undergo therapy. The trial court also determined that appellee and her husband had exhibited inappropriate behavior in their bathing practices with the child which the court ordered to stop. Appellee and her husband were also ordered to undergo therapy. It is from this judgment of October 28, 1993 that appellant appeals.
*1075 Appellant assigns four errors on appeal and consolidates them into two arguments in brief. First, he argues that the trial court erred in applying the wrong burden of proof and in failing to apply the proper rules of evidence. Second, he argues that under La. R.S. 9:376[1] it was reversible error for the trial court to fail to appoint an attorney to represent the minor child.
Appellant’s focus in his first argument concerns the sufficiency of the evidence and whether the trial court erred in reaching its determination. On appeal, the factual findings of the trial judge are entitled to great weight and | .¡.should not be overturned on review absent a showing of a clear abuse of discretion. Norris v. Norris, 604 So.2d 107 (La.App. 2nd Cir.1992); Guillory v. Guillory, 602 So.2d 769 (La.App. 3rd Cir.1992); Hicks v. Hicks, 594 So.2d 532 (La.App. 5th Cir.1992). A trial judge has wide discretion to determine the best interest of the child and his custody order should not be disturbed on appeal unless there has been a manifest abuse of discretion. Russell v. Russell, 589 So.2d 3 (La.App. 5th Cir.1991). Where a change of custody is sought after a considered decree has been issued, the person seeking the change must meet his burden of proof by clear and convincing evidence. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
Here, the record reveals that the testimony and medical reports introduced into evidence clearly support the trial judge’s findings. In fact, there was no contrary evidence, only an inconclusive report by Dr. William Janzen.
Appellee and her husband testified that the report of sexual abuse was initiated after the child had attempted to touch Mr. Kiefer’s groin area. Upon being reprimanded she stated spontaneously that her daddy allowed her to touch him. Upon further questioning, the child described several different instances of sexual abuse that her father had perpetrated. Appellee then took the child to a clinical social worker, Elaine Spence-Carver. Ms. Spence-Carver recommended that ap-pellee have the child medically examined and an appointment was set up through Children’s Hospital with Dr. Rebecca Russell.
Dr. Russell, a pediatrician, conducted a physical examination of the child and had a verbal interview with the child. Dr. Russell was accepted at trial as an expert in the field of pediatries and child abuse. She testified at trial that the physical exam revealed evidence consistent with sexual abuse, namely, adhesions of the hymen indicative of a healed rupture. She opined that the injury would not be consistent with diaper rash, infections, falling injuries or self exploration, but rather was caused by penetration. Dr. Russell opined that based Ison her physical exam of the child, she thought the child had been sexually abused.
Dr. Russell also conducted a verbal interview with the child involving anatomically correct dolls. During the course of the interview, often in spontaneous utterances, the child revealed numerous instances of sexual behavior that she had participated in with her father, including touching his penis, kissing his penis and having him rub his penis on her until ejaculation. Dr. Russell gave several examples from the interview of the reliability of the information she got from the child. She pointed out that many of the child’s comments were spontaneous and that the child would disagree with her on some points, which is indicative of the fact that the child was not just answering what she thought the interviewer wanted to hear. The child also used the anatomically correct dolls to indicate the exact behavior. Also, the child used age-appropriate words in her descriptions and not adult words that she may have heard. It was Dr. Russell’s opinion that the child had been sexually abused by appellant.
Next, the child was taken to the East Jefferson Office of Community Services (OCS) and spoke with Kenneth Trahan. His investigation of the complaint gave rise to further interviews with the child in which she again confirmed the sexual acts in which appellant had made her participate.
*1076 Appellant denied that he had ever sexually abused his child. He attempted to cast doubt on appellee’s motives in reporting the sexual abuse by testifying that, in the week before she made the report, he had an argument with her first, and later with Mr. Kiefer about the child’s bathing practices in appel-lee’s home. Appellant testified that the child had been at his home on a visit when she expressed to his wife that she bathed with Mr. Kiefer. Mrs. Yellon was concerned over this statement and reported it to appellant. In turn, he discussed it with appellee, expressing that he believed it was inappropriate and requested that it stop. Two days later, when appellant called to speak with his child, he had an | (¡argument with Mr. Kiefer over the bathing matter and Mr. Kiefer told him that he could not speak to her because Mr. Kiefer was about to give her a bath. They quarrelled and Mr. Kiefer hung up. Appellant contends that appellee and her husband fabricated the sexual abuse charges in order to stop appellant from asserting charges against Mr. Kiefer for bathing with the child.
Appellee basically confirmed the events regarding the bathing incidents and problems that arose just days before the sexual abuse complaint was filed.
Aside from allegations concerning appel-lee’s motives, appellant did not produce any other evidence to refute the testimony and medical reports that the minor child had been sexually abused by him. The evidence most favorable to him was a report and testimony by Dr. William Janzen, a court appointed psychologist, who reported that he could not form a definite conclusion regarding the sexual abuse. He expressed concern over the possibility of fabrication. When he interviewed the child on six different occasions, she did not divulge the same detailed reports of sexual activity with appellant that she had divulged to the other interviewers. She did talk about bathing with Mr. Kiefer and touching his penis in the shower. She also stated, spontaneously, that appellant and Mr. Kiefer will not allow her to touch their penises anymore.
The trial court heard approximately six days of testimony, viewing the witnesses and making credibility determinations in finding that the child had been sexually abused and that appellant was the perpetrator. He also found that appellee and Mr. Kiefer had subjected the child to inappropriate bathing. Based on these factual findings, he awarded sole custody of the child to appellee, terminated appellant’s visitation rights pending counseling and a showing that such visitation will not be injurious to the child, ordered Mr. Kiefer to refrain from bathing the child or bathing with the child, and ordered appellee and Mr. Kiefer to report to Family Services for evaluation, therapy and parental counseling.
After reviewing the entire record, exhibits and appellate briefs, we find that there was clear and convincing evidence to support the trial court’s findings and that the trial court was not clearly wrong in reaching the decision.
Appellant, in pro se brief, argues that the test for change of custody set out in Bergeron, supra, was not properly considered by the trial court nor sustained by the evidence. The burden of proof set out in Ber-geron is indeed a heavy one. The party seeking the change in custody, after a considered decree, as here, must prove that continuation of the present custody is so deleterious to the child as to justify the modification. Appellant argues that this heavy burden of proof was not met here. We disagree.
While the trial judge may not have articulated it as such in his reasons for judgment, upon finding that appellant had sexually abused his child, he concluded that the test set out in Bergeron, had clearly been met and that the present custody was so deleterious to the child that modification of custody was justified. Furthermore, La.R.S. 9:364(D) virtually mandates the change of custody as it provides in pertinent part:
If any court finds that a parent has sexually abused his or her child or children, the court shall prohibit all visitation and contact between the abusive parent and the children, until such time, following a contradictory hearing, that the court finds that the abusive parent has successfully completed a treatment program de *1077 signed for such sexual abusers, and that supervised visitation is in the children’s best interest.
In his arguments concerning the sufficiency of the evidence in the case, appellant argues that the trial court erred in qualifying Dr. Russell as an expert. She was tendered and accepted by the trial court as an expert in the field of pediatrics and the medical diagnosis of sexual abuse.
La.C.E. art. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.
| git is well settled that, under this article, the trial judge is afforded broad discretion in his determination as to whether expert testimony should be admissible and who should or should not be permitted to testify as an expert. La.C.E. art. 702, comment (d). Dye v. Schwegmann, 599 So.2d 412 (La.App. 4th Cir.1992), writ granted, vacated on other grounds, 607 So.2d 564 (La.1993), rehearing denied, 609 So.2d 248.
In this case, Dr. Russell testified that she was a licensed pediatrician and had extensive training and experience in the field of child sexual abuse. She worked at Children’s Hospital, where she developed and was the director of the Child Abuse Program. She both attended and conducted numerous seminars and training programs in this area. She was admitted as an expert in courts in St. Tammany, Washington, Terrebonne, St. Bernard, Orleans, Jefferson and Plaquemines Parishes, as well as in the states of Georgia, Mississippi and Texas. Clearly, there was no abuse of the trial judge’s broad discretion in admitting Dr. Russell as an expert.
Appellant also includes in his argument on the sufficiency of the evidence, that the trial court erred in viewing, in camera, a video interview of the child with an OCS worker. No reference is made in his brief as to the portion of the record where this matter was considered below and no argument is made as to how he was prejudiced by the trial court viewing of the tape.
Based on what is before us, we find no reversible error presented by defendant’s argument on this point. First, the record does not indicate that such a viewing took place, nor that it was objected to by appellant nor the purpose for the viewing. Absent such a showing in the record, the matter cannot be considered by this court on appeal. The tape has not been admitted into evidence and there is no mention of it in the trial court’s reasons for judgment. Thus, there is no indication that the trial court relied on it in any way. It is fundamental that the trial court may review evidence in camera to make a 19determination as to its admissibility. There is no prejudice to appellant in the trial court’s viewing of the tape where it was neither erroneously admitted into evidence nor considered by the trial court.
Finally, appellant argues that the trial court committed reversible error in failing to appoint an attorney to represent the child in the proceedings as required by La.R.S. 9:376. Appellee argues that appellant waived any right he may have had to have an attorney appointed to represent the child by not asserting it timely. We agree.
La.R.S. 9:376 provided:
A. In any child custody or visitation proceeding, the court, upon its own motion, upon motion of any parent or party, or upon motion of the child, may appoint an attorney to represent the child if, after a contradictory hearing, the court determines such appointment would be in the best interest of the child. In determining the best interest of the child, the court shall consider:
(1) Whether the child custody or visitation proceeding is exceptionally intense or protracted.
(2) Whether an attorney representing the child could provide the court with significant information not otherwise readily available or likely to be presented to the court.
(3) Whether there exists a possibility that neither parent is capable of provid *1078 ing an adequate and stable environment for the child.
(4) Whether the interests of the child and those of either parent, or of another party to the proceeding, conflict.
B. The court shall appoint an attorney to represent the child if, in the contradictory hearing, any party presents a prima facie case that a parent or other person earing for the child has sexually, physically, or emotionally abused the child or knew or should have known that the child was being abused, (emphasis added).
C. The order appointing an attorney to represent the child shall serve as his enrollment as counsel of record on behalf of the child.
D. Upon appointment as attorney for the child, the attorney shall interview the child, review all relevant records, and conduct discovery as deemed necessary to ascertain facts relevant to the child’s custody or visitation.
E. The appointed attorney shall have the right to make any motion and participate in the custody or visitation hearing to the same extent authorized for either parent.
F. Any costs associated with the appointment of an attorney at law shall be apportioned among the parties as the court deems just, | staking into consideration the parties’ ability to pay. When the parties’ ability to pay is limited, the court shall attempt to secure proper representation without compensation.
Under subsection (A) of the statute above, it is incumbent upon a party, parent, child or the court to move for the appointment of counsel and to pursue the contradictory hearing necessary before such an appointment can be made. Under subsection (A) the appointment of counsel is discretionary and based on the best interest of the child. Here, no such timely motion was made.
Under subsection (B) of the statute above, appointment is mandatory if, at the contradictory hearing invoked under subsection (A), a prima facie case of sexual abuse is presented. Subsection (B) does not, as defendant argues, make appointment of counsel for the minor child mandatory in every case involving sexual abuse allegations.
Appellant, in his initial pleading, filed by different counsel, moved for appointment of an attorney for the child. Counsel changed and the matter was never pursued or even mentioned again until appeal to this court. No pre-trial contradictory hearing took place in this case regarding the appointment of counsel for the child and defense counsel did not object to the absence of counsel for the child before trial of the matter. Furthermore, appellant does not allege any prejudice suffered by the lack of appointment of counsel for the child. The record amply supports the trial court findings, as stated above. Accordingly, under the circumstances presented here, we find no error that counsel was not appointed to represent the minor child prior to trial of the custody rules.
Child custody matters are never final and are always reviewable by the court. The main focus in all child custody and visitation matters is the best interest of the child. The purpose of La.R.S. 9:376 is to ensure that the best interests of the child are served. The appointment of an attorney is for the benefit of the child and not for the benefit of either parent.
| nAccordingly, for the reasons stated above, .we affirm the judgment of the trial court and order appellant to pay all costs of appeal.

AFFIRMED.

. La.R.S. 9:376 provided the law applicable at the time of the trial of this case. That statute has been reenacted as La.R.S. 9:345, with no substantive changes, effective January 1, 1994.