11 JOAN BERNARD ARMSTRONG, Judge.
This is an automobile personal injury case. Liability is not in dispute but the defendants claim that the plaintiffs did not suffer injuries as severe as alleged by the plaintiffs. The case was tried to a jury which awarded general and special damages to each of the two plaintiffs. The defendants appeal. Because, upon the whole record below, there were no errors of law or abuse of discretion by the trial court, and the jury was not clearly wrong-manifestly erroneous and did not abuse its discretion, we affirm the judgment of the trial court.
This case involves a three-car chain reaction rear-end collision. Plaintiffs Ronald Courtney and Darryl Sampson were in the lead car. Keith Hitchins was in the middle car. Alice C. Williams was in the rear car. All three cars were waiting at a red light. Ms. Williams testified that, when the light turned to green, she started forward before the cars in front of her did and, as a result, her car struck the rear of the car in front of her, Mr. Hitchens’ car, and propelled it into the rear of the car occupied by Mr. Courtney and Mr. Sampson.
|2Mr. Courtney and Mr. Sampson filed suit against Ms. Williams, her employer, Washington Transportation Company, the owner of the car driven by Ms. Williams, Enterprise Leasing Company, and the insurer of the car driven by Ms. Williams, Scottsdale Insurance Company/National Casualty Insurance Company. Mr. Courtney and Mr. Sampson also filed suit against Keith Hitchens, Lydia Hitchens (presumably the owner of the car driven by Mr. Hitchens) and their insurer, Allstate Insurance.
Mr. Courtney’s and Mr. Sampson’s claims against the Hitchenses and their insurer were settled and dismissed prior to trial. The case proceeded to trial against Ms. Williams and her employer and car owner and their insurer. Ms. Williams admitted liability. Thus, the issue at trial was the extent of the injuries, if any, suffered by Mr. Courtney and Mr. Sampson. After trial, Mr. Courtney was awarded $150,000 general damages and $57,841 special damages and Mr. Sampson was awarded general damages of $25,000 and special damages of $22,683.89.[1]
*596 One issue at trial was how hard was the impact. Ms. Williams testified that it was a minor impact. Mr. Courtney and Mr. Sampson testified that it was a major impact. Mr. Sampson described it as an “explosion”. Mr. Hitchens, in the middle car, testified that it was a major impact and that he, himself, had been severely injured. Ultimately, this was an issue of credibility. The defendants attempted | aiinpeachinent of Mr. Courtney and Mr. Sampson as to details of the impact by use of their deposition testimony. However, it cannot be said that the main thrust of their testimony as to the impact necessarily was discredited. Their credibility was a fair question for the jury as was the credibility of Ms. Williams and Mr. Hitchens.
As to the severity of the injuries, Mr. Courtney and Mr. Sampson both testified as to the onset and course of their symptoms, which were primarily involved their backs, and as to their doctor visits and courses of treatment. Mr. Courtney testified as to lost time from work and sexual problems from his back injury. Mr. Sampson testified to having to wear a back brace prescribed by his doctor. Both men testified as to various medications they were prescribed and their medical expenses. Mr. Courtney testified as to $12,591 in medical expenses and Mr. Sampson testified as to $12,563.89 in medical expenses.
Both Mr. Courtney and Mr. Sampson presented the testimony of their treating physicians. The defendants presented the testimony of medical expert witnesses who examined the plaintiffs to evaluate their claims of injury.
Dr. Stuart Phillips, an orthopedic surgeon, treated Mr. Courtney for an extended period. He examined Mr. Courtney and took a detailed medical history. He examined an MRI that had been taken of Mr. Courtney’s back about six weeks after the accident and had another MRI performed about two years after the accident. The MRIs showed a tear in a ligament and a bulging/protruding disc in Mr. Courtney’s back. Dr. Phillips attributed these injuries to the accident and | ¿testified that they were the source of Mr. Courtney’s pain and symptoms. Dr. Phillips also had an EMG test performed and testified that the test showed an irritated nerve root which was to be expected with a protruding/bulging disc. The test also showed that Mr. Courtney had arthritis in his mid-back and Dr. Phillips testified that the arthritis became symptomatic as a result of the accident.
Dr. McCann, a family practitioner, treated Mr. Sampson for an extended period of time. He saw Mr. Sampson for at least 22 visits, the first one the day after the accident, and kept medical record notes of Mr. Sampson’s continued pain and symptoms throughout the course of treatment. Dr. McCann testified that, more likely than not, Mr. Sampson’s pain and symptoms were the result of the accident. He also testified specifically that Mr. Sampson was believable, that he was not malingering, and that false reports of pain and symptoms would be detectable.
Dr. Butler, an orthopedist, was engaged by the defendants to examine each of the plaintiffs and to review their medical records. He testified that Mr. Sampson had a degenerative or aging process in the spine. However, he also testified that he did not know whether Mr. Sampson was injured in the accident. He testified that Mr. Courtney gave inconsistent responses during the examination. He found no organic reason for Mr. Courtney’s complaints. He thought that the MRI’s *597 showed degenerative changes and he did not see any arthritis on the MRI.
Dr. Neil Baum, a urologist, treated Mr. Courtney for sexual problems subsequent to the accident. Dr. Phillips and Dr. Baum testified that nerves in the back affect the penis and that Mr. Courtney’s back injury could, thus, cause sexual | ^problems. Dr. Baum related Mr. Courtney’s sexual problems to the accident. Mr. Courtney did not discuss his sexual problems with Dr. Phillips (who referred Mr. Courtney to Dr. Baum) for an extended period. Dr. Baum testified that this was not unusual as men are reluctant to discuss sexual problems even with their doctors.
Dr. Richard Levine, a urologist, was engaged by the defendants and testified as to Mr. Courtney’s sexual problems. He thought it was unusual for Mr. Courtney to have waited such a long time after the accident to have discussed his sexual problems with a doctor. He also felt that the proper tests for determining the cause of Mr. Courtney’s sexual problems had not been done.
Martha Nicholls-Ketchum, Ph.D., a biomedical engineer, testified for the defendants. She opined, based upon descriptions of the accident, that the collision was at no more than three miles per hour. She also opined that a three mile per hour collision would not cause a back injury. There was considerable controversy in the trial court as to her qualifications, the scientific validity of her testimony, and alleged lack of objectivity, but the trial court ultimately admitted her evidence. However, these points were properly considered by the jury in determining how much weight, if any, to give to her testimony. Further, her testimony had to be weighed against the testimony of the plaintiffs and Mr. Hitchens, who testified as to a major impact, and the testimony of Dr. Phillips and Dr. McCann, who said that the severe back injuries could occur from low impact rear-end collisions.
| ^Considering all of the above-discussed evidence, as well as other medical evidence presented, it is apparent that there is a sufficient evidentiary basis for the jury to have reasonably found that the plaintiffs suffered the injuries they allege. The defendants point out that, subsequent to the accident, each of the defendants suffered back complaints as a result of other incidents. Specifically, Mr. Courtney suffered back symptoms while moving a 70 pound sack of mortar mix and Mr. Sampson suffered back complaints after changing a tire and after moving a car battery. However, each of these incidents was brought to the attention of the jury during the course of the trial to consider with respect to the quantum of damages. Considering the onset of the plaintiffs’ symptoms shortly after the accident and well before the post-accident incidents at issue, and the duration of the symptoms, it is certainly the case that the jury could reasonably award substantial sums for the injuries caused by the accident despite the occurrence of the post-accident incidents.
The defendants complain that the trial court erred by striking two jurors for cause. Specifically, the defendants argue that the trial court erroneously struck the two jurors upon the basis of their demean- or during questioning. However, while the trial court did mention the two jurors’ demeanor, it struck them because their initial responses to questions indicated a reluctance to award large sums as damages. While they were rehabilitated to some extent on further questioning, the trial court could reasonably consider their initial responses as sufficient reason to strike them. See La.Code Civ. Proc. art. 1765.
*598 |7The defendants complain of the trial court’s failure to read to the jury their requested jury charges, number 14, which related to intervening causes, and No.l, which related to physical evidence. As the trial court’s instructions to the jury were not included in the transcripts sent up on appeal, we ordered that the record be supplemented with the transcript of the trial court’s instructions to the jury. We are informed that the court reporter did not take down the trial court’s instructions to the jury, so there is no such transcript. The adequacy of the jury instructions must be judged by examining the jury instructions as a whole. E.g., Dye v. Schwegmann Giant Supermarkets, 599 So.2d 412 (La.App. 4th Cir.1992). It could well be that a point covered by a jury charge that was requested but not given was covered adequately by a part of the instructions that were given. In this case, we cannot conduct the required review of the jury instructions as a whole because there is no transcript of the jury instructions. Therefore, we will not consider the defendants’ arguments as to their requested jury instructions. If a party in a civil case wishes to preserve for appeal an alleged error as to a requested jury instruction that was not given, then that party should insure that the court reporter takes down the jury instructions that were given. Otherwise, it is. impossible to determine on appeal whether it was error to not give the requested jury instruction.
The defendants argue that the jury verdict form should have included just two lines for damages — one line for special damages and one line for general damages. In support of this contention, the defendants cite Article 1812 of the |sCode of Civil Procedure. However, Article 1812 does not specify that only two lines may be used on the jury verdict form. Thus, so long as both properly-recoverable special and general damages are covered, the number of lines on the jury verdict form is a matter committed to the sound discretion of the trial court in light of the particular factual issues of the case as shown by the evidence at trial.
Lastly, we note that, of course, the amount of general damages is an issue committed to the sound discretion of the trier of fact (in this case, the jury) and that such discretion is “vast”. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), cert denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). We have reviewed the record as a whole with respect to the amounts of general damages and, while there is conflicting evidence, the record as a whole does not reveal any abuse of discretion by the jury as to the amount of general damages.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

. A directed verdict was rendered in favor of the owner of the car driven by Ms. Williams, Enterprise Leasing Company, on the ground that no negligence was shown as to that de- *596 fendanl. The plaintiffs do not appeal that directed verdict.